No. 23-3227
Cross Appeal Case No. 23-3390
No. 24-159

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

WEALTHY, INC. and DALE BUCZKOWSKI,

*Plaintiffs- Appellants,*

v.

SPENCER CORNELIA, CORNELIA MEDIA LLC, and
CORNELIA EDUCATION LLC,

*Defendants- Appellees,*

and

JOHN MULVEHILL; et al.,

*Defendants.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:21-cv-01173-JCM-EJY
Honorable James C. Mahan, United States District Judge

**APPELLANTS' FURTHER EXCERPTS OF RECORD**

| | |
|---|---|
| TAMARA BEATTY PETERSON | JEFFREY VOCKRODT |
| PETERSON BAKER, PLLC | CULHANE MEADOWS PLLC |
| 701 S. 7th Street | 13101 Preston Road |
| Las Vegas, NV 89101 | Suite 110-1510 |
| Telephone:  702.786.1001 | Dallas, TX 75240 |
| | Telephone: 202.615.9886 |

*Attorneys for Appellants Wealthy Inc. and Dale Buczkowski*

FER-001

# INDEX

| ECF No. | Date | Description | Pages |
|---------|------|-------------|-------|
| 254 | 10/26/2023 | Portions of Plaintiffs Wealthy Inc. and Dale Buczkowski's Response to Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC's Motion for Costs and Attorneys Fees | FER-004—FER-005 |
| 182-2 | 3/20/2023 | Portions of Deposition of Spencer Cornelia taken on 05/11/2022 | FER-006—FER-008 |
| 162 | 03/03/2023 | Portions of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment | FER-009—FER-010 |
| 81-3 | 10/28/2022 | Portions of Deposition of Spencer Cornelia taken on 05/11/2022 | FER-011—FER-015 |
| 79-4 | 10/28/2022 | Portions of Transcription of YouTube Video the Authentic or Charlatan dated December 19, 2020 | FER-016—FER-018 |
| 79-3 | 10/28/2022 | Portions of Deposition of Dale Buczkowski taken on 08/13/2022 | FER-019—FER-022 |
| 79 | 10/28/2022 | Portions of Response in Opposition to Defendant's Special Motion to Dismiss Pursuant to NRS 41.660 and Motion for Summary Judgment | FER-023—FER-034 |

| 62 | 09/30/2022 | Defendants' Special Motion to Dismiss Pursuant to NRS 41.550 and Motion for Summary Judgment | FER-035—FER-074 |
|---|---|---|---|
| 1-7 | 06/21/2021 | Excerpts from "House Hack Expert" e-book | FER-075—FER-077 |
| 1 | 06/21/2021 | Portions of the Complaint | FER-078—FER-081 |

TAMARA BEATTY PETERSON, ESQ., Bar No. 5218
tpeterson@petersonbaker.com
NIKKI L. BAKER, ESQ., Bar No. 6562
nbaker@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone:  702.786.1001
Facsimile:  702.786.1002

JEFFREY VOCKRODT, ESQ. *(Admitted Pro Hac Vice)*
jvockrodt@cm.law
DAVID JACOBY, ESQ. *(Admitted Pro Hac Vice)*
djacoby@cm.law
CULHANE MEADOWS PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240
Telephone: 202.615.9886

*Attorneys for Plaintiffs Wealthy Inc. and Dale Buczkowski*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WEALTHY INC. and DALE BUCZKOWSKI,<br><br>   Plaintiffs,<br><br>v.<br><br>SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC,<br><br>   Defendants. | Case No.:  2:21-cv-01173-JCM-EJY<br><br><br>**PLAINTIFFS WEALTHY INC. AND DALE BUCZKOWSKI'S RESPONSE TO DEFENDANTS SPENCER CORNELIA, CORNELIA MEDIA LLC, AND CORNELIA EDUCATION LLC'S MOTION FOR COSTS AND ATTORNEYS' FEES [ECF NO. 251]** |
| WEALTHY INC. and DALE BUCZKOWSKI,<br><br>   Plaintiffs,<br><br>v.<br><br>JOHN MULVEHILL, JOHN ANTHONY LIFESTYLE, LLC, and OPTIMIZED LIFESTYLE LLC<br><br>   Defendants. | Consolidated With:<br>Case No.:  2:22-cv-00740-JCM-EJY |

FER-004

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

identifying client information, [ECF No. 54] at 5:3-22, and had produced financial data of the company, including a full list of customers identified by client identification number, rather than name, to protect their privacy. [ECF No. 54] at 3:12-13.

After a hearing, the Magistrate Judge found that allowing deposition questions "regarding a sample of Plaintiffs' customers" was appropriate; the Court ordered the parties to meet and confer about the size of the sample and the Court further ordered that any questions and responses were designated attorney eyes only. [ECF No. 63] at 13. The Order [ECF No. 63] notes only that "testing Buczkowski's legal residence is a relevant and proportionate inquiry," even though Plaintiffs asserted federal question jurisdiction. [ECF No. 1] at 1. The Court specifically ordered that the deposition was "not a wholesale reopening of Mr. Buczkowski's deposition" as Defendants already had an opportunity to ask questions. [ECF No. 63.]

The Court ordered Mr. Buczkowski to provide four dates he was available for the deposition in Las Vegas, which he did. While the Cornelia Defendants malign Mr. Buczkowski for providing two weekend dates out of the four, the original deposition of Mr. Buczkowski was held on a Saturday to accommodate travel schedules. *See* [ECF 73-2] at 7. Even so, the Cornelia Defendants themselves asked for a Sunday for the continued deposition. S*ee* [ECF No. 73-2] at 5. The Court ultimately ordered the deposition to proceed in Clark County, on a Friday about six weeks later.[3] S*ee* [ECF No. 76].

The parties filed cross-motions for summary judgment. [ECF No. 60]; [ECF No. 61.][4] For the first time, the Cornelia Defendants asserted that the First and Second videos did not contain "advertisements" and did not refer to a "particular product of Defendants." Plaintiffs specifically

---

[3] Ironically, after all of the hand-wringing about needing to take a deposition in person in Las Vegas, when noticing the deposition, the Cornelia Defendants waived their right to take an in-person deposition and proceeded virtually, while Mr. Buczkowski was physically present in Las Vegas at counsel's offices. *See* **Exhibit 2** to Vockrodt Dec. (Notice of Deposition of Dale Buczkowski dated December 1, 2022, noting that deposition "will take place remotely via Zoom").

[4] The Cornelia Defendants styled this filing as a "Special Motion to Dismiss Pursuant to NRS 41.660" as well as a motion for summary judgment. A special motion to dismiss pursuant to NRS 41.660, however, must be filed "within 60 days after service of the complaint, which period may be extended by the court for good cause shown". NRS 41.660(2). The Court did not extend the time to file a special motion to dismiss. The Court ultimately denied the special motion to dismiss, finding that the Cornelia Defendants failed to meet their burden in satisfying the anti-SLAPP statute. *See Order* [ECF No. 247].

6

FER-005

# EXHIBIT 1

## Deposition Transcript of Spencer Cornelia

FER-006

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WEALTHY INC. and DALE        )
BUCZKOWSKI,                  )
                             ) CASE NO.:
            Plaintiffs,      ) 2:21-cv-01173-JCM-EJY
                             )
vs.                          )
                             )
SPENCER CORNELIA,            )
CORNELIA MEDIA LLC, and      )
CORNELIA EDUCATION LLC,      )
                             )
            Defendants.      )

** CONFIDENTIAL **

VIDEOTAPED DEPOSITION OF SPENCER CORNELIA

Taken on Wednesday, May 11, 2022

At 701 South Seventh Street

By a Certified Court Reporter

At 9:56 a.m.

Las Vegas, Nevada

Reported By:  Karen L. Jones, CCR NO. 694
Job No.:  49170   Firm No.:  061F



FER-007

CONFIDENTIAL

Spencer Cornelia                                  Wealthy Inc., et al. v. Spencer Cornelia, et al.

Page 72

a dating coach.  And there was positive mention of him in the forums.  I remember people spoke positively of him.

Q.      And what do you remember them saying positively about him?

A.      That he was some mysterious figure behind the scenes.  I don't know if anyone had firsthand experience because at the time, I believe he was -- actually, I don't remember what he was doing with RSD specifically, but he was mentioned by the instructors positively.  So when I say "positively," it was the instructors speaking about him.

Q.      And what do you recall them saying about RSD Derek?

A.      I don't recall anything specifically.

Q.      But you do recall it was positive?

A.      Yeah.

Q.      Have you ever met Mr. Buczkowski?

A.      I have not.

Q.      Have you ever seen him in person?

A.      I have not.

MR. VOCKRODT:  I don't have any further questions.  Thank you.

THE VIDEOGRAPHER:  Are we going off?

 

Marc J. Randazza, NV Bar No. 12265
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
4974 S. Rainbow Blvd., Suite 100
Las Vegas, NV 89118
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendants
Spencer Cornelia, Cornelia Media LLC,
and Cornelia Education LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WEALTHY INC., and DALE BUCZKOWSKI,<br><br>Plaintiffs,<br><br>SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC,<br><br>Defendants. | Case No. 2:21-cv-01173-JCM-EJY<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Consolidated With:<br>Case No. 2:22-cv-00740-JCM-EJY |
| WEALTHY INC., and DALE BUCZKOWSKI,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN MULVEHILL, JOHN ANTHONY LIFESTYLE, LLC, and OPTIMIZED LIFESTYLE LLC,<br><br>Defendants. | |

Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC (collectively, "Defendants") hereby oppose Plaintiffs Dale Buczkowski and Wealthy Inc.'s Motion for Partial Summary Judgment (the "Motion"), filed on September 30, 2022 (ECF No. 60).

FER-009

any evidence of damages in the middle of the case and decided to rely on a theory of defamation *per se*, but they cannot ignore the operative Complaint.

Plaintiffs attach the expert report of Ian K. McDonough to their opposition to Defendants' summary judgment motion to show that they have suffered damages, without discussing any aspect of the report. (ECF No. 80). The rebuttal expert report of Richard S. Hoffman identifies the numerous deficiencies of McDonough's report, including but not limited to: not using the highest quality of data available; calculating lost revenue instead of profits; making unsupported assumptions about Plaintiffs' growth; and making other unwarranted assumptions. (*See* redacted Hoffman report, ECF No. 57-2).

In addition to these problems, Plaintiffs and Dr. McDonough provided testimony especially harmful to their damages claims. Wealthy testified that some of the documents underlying McDonough's report were either modified by or created by McDonough and that such documents, as produced in discovery, could "easily be taken out of context" and have "incomplete data." Wealthy Trans. at 207:23-209:1, 211:14-212:23, & 213:23-214:17. It also testified that it does not calculate or report its profits in the normal course of business, necessarily making any damages calculation based on lost profits purely speculative. *Id*. at 220:10-20 & 221:22-222:7.

McDonough's testimony showed his damages calculation is fatally flawed in numerous ways. First, his calculation was based solely on an assumed loss in the growth of the number of Plaintiffs' clients, with no regard for how much these assumed customers would spend or whether this would actually result in a loss of revenue. Transcript of deposition of Ian McDonough ("McDonough Trans."), attached as **Exhibit 4**, at 54:6-55:6. He admitted that the period of loss of customers in his report was not based on anything specific and was "somewhat arbitrary." *Id*. at 36:1-17. He did not review any profit and loss statements, nor did he consider such obviously important information relevant to his calculation. *Id*. He did not review any information regarding Plaintiffs' costs and admitted that such information would have been useful in calculating damages. *Id*. at 58:5-60:16 & 62:17-64:19. He did not review any of Plaintiffs' tax returns, had no

- 26 -
Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment
2:21-cv-01173-JCM-EJY

# EXHIBIT B

# REDACTED VERSION OF
# Excerpts of Deposition of Spencer Cornelia taken on May 11, 2022

# EXHIBIT B

FER-011

CONFIDENTIAL
Spencer Cornelia                          Wealthy Inc., et al. v. Spencer Cornelia, et al.

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WEALTHY INC. and DALE        )
BUCZKOWSKI,                  )
                             ) CASE NO.:
             Plaintiffs,     ) 2:21-cv-01173-JCM-EJY
                             )
vs.                          )
                             )
SPENCER CORNELIA,            )
CORNELIA MEDIA LLC, and      )
CORNELIA EDUCATION LLC,      )
                             )
             Defendants.     )

** CONFIDENTIAL **

VIDEOTAPED DEPOSITION OF SPENCER CORNELIA

Taken on Wednesday, May 11, 2022

At 701 South Seventh Street

By a Certified Court Reporter

At 9:56 a.m.

Las Vegas, Nevada

Reported By:  Karen L. Jones, CCR NO. 694
Job No.:  49170  Firm No.:  061F

Case 2:21-cv-01173-JCM-EJY   Document 81-3   Filed 10/28/22   Page 8 of 30

CONFIDENTIAL

Spencer Cornelia                                    Wealthy Inc., et al. v. Spencer Cornelia, et al.

Page 15

BY MR. VOCKRODT:

Q.    And how many people subscribed to this hundred dollar membership?

A.    One for each, so two in total.

Q.    Was it the same person or a different person?

A.    Different.

Q.    How do you -- how does your Cornelia Media develop revenue -- derive revenue?

A.    It is through Google AdSense.  Google owns YouTube.  When ads are played on my videos and an audience member watches the ads, I get paid.

Q.    Is that the only means in which you are generating income?

A.    Currently, yes.  Through YouTube is the question, right?

MR. SHEPARD:  Yes.

BY MR. VOCKRODT:

Q.    What other activities -- in what other activities are you generating income right now?

A.    Through YouTube specifically?

Q.    Any activities.

A.    We'll start with YouTube.  YouTube is through AdSense.  Real estate, I have rental properties such that I generate rental income.  I



CONFIDENTIAL

Spencer Cornelia                                      Wealthy Inc., et al. v. Spencer Cornelia, et al.

Page 72

a dating coach.  And there was positive mention of him in the forums.  I remember people spoke positively of him.

Q.     And what do you remember them saying positively about him?

A.     That he was some mysterious figure behind the scenes.  I don't know if anyone had firsthand experience because at the time, I believe he was -- actually, I don't remember what he was doing with RSD specifically, but he was mentioned by the instructors positively.  So when I say "positively," it was the instructors speaking about him.

Q.     And what do you recall them saying about RSD Derek?

A.     I don't recall anything specifically.

Q.     But you do recall it was positive?

A.     Yeah.

Q.     Have you ever met Mr. Buczkowski?

A.     I have not.

Q.     Have you ever seen him in person?

A.     I have not.

MR. VOCKRODT:  I don't have any further questions.  Thank you.

THE VIDEOGRAPHER:  Are we going off?

 

Spencer Cornelia                                Wealthy Inc., et al. v. Spencer Cornelia, et al.

Page 89

A.    250 to 300.

Q.    So as far as cease-and-desist letters go, you've received four out of 250 to 300?

A.    Very few, yeah.  Two of them were very, very weak.  It was just an attempt.  But yes, very few.  I think four or five is most accurate.

Q.    And your -- in these videos, did you mention any of -- any of the products that you offer to third parties, any kind of -- any sort of courses, books, anything like that that you offer for sale?

A.    I believe I did, yes.

Q.    Do you recall which ones those were?

A.    There was one video.  And are we speaking about the e-books that were on sale for a price or e-books that were free?

Q.    Anything that you were selling.

A.    Okay.  Selling for a price, one video.

Q.    Okay.  And do you recall the context of -- well, I should first ask, which e-book was this?

A.    There are two e-books.  One is on house hacking, the other is on the first 1,000 subscribers for growing a channel on YouTube.

Q.    Okay.  And so that means -- what were



# EXHIBIT 2

# Excerpts of Transcription of YouTube Video The Authentic or Charlatan

# EXHIBIT 2

FER-016

The Authentic or Charlatan                                    Wealthy Inc. v. Spencer Cornelia

Page 1

TRANSCRIPTION OF YOUTUBE VIDEO

THE AUTHENTIC OR CHARLATAN

Saturday, December 19, 2020

_____

Proceedings recorded by electronic sound recording;

Transcript produced by transcription service.

_____

Transcribed by:  BECKY J. PARKER, RPR, CCR
                 Nevada Certified Court Reporter No. 934

www.oasisreporting.com                OASIS REPORTING SERVICES                702-476-4500

WEALTHY000058

composes his business mentorship stuff and all this bullsh- mentorship programs, he's having, like, 19- and 20-year-old kids, who are working for free, doing research to try to just find like -- that's why the content's all recycled.  It's just stuff they found on the internet and in books.

SPENCER CORNELIA:  By the way, he has shared the screenshots with me.  We are talking about someone who knows nothing about a topic, is asked to research the topic, and then they write the copy for this program as a real estate riches or a stock market --

JOHN ANTHONY:  Yeah.

SPENCER CORNELIA:  -- mastery.

JOHN ANTHONY:  And it -- and it pisses you off, too, because you do some real estate stuff on the side.  And here you have --

SPENCER CORNELIA:  Right.

JOHN ANTHONY:  -- that knows literally nothing, that's 19, and he's designing a course that people are going to pay 5K just because it's going to have some good marketing behind it.  Okay?  Keep in mind, Derek is using the marketer that RSD uses, career scammer, this guy Mitch McHale, or whatever.  Tai Lopez used him.  You guys, you know -- you know, enough said there.  All the -- he's -- he's the clas- -- it's a

          

# EXHIBIT 1

# Excerpts of Deposition of Dale Buczkowski taken on August 13, 2022

# EXHIBIT 1

FER-019

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WEALTHY INC. and DALE )Case No.
BUCZKOWSKI, )2:21-cv-01173-JCM-EJY
                        )
        Plaintiffs, )
                        )
  vs. )
                        )
SPENCER CORNELIA, CORNELIA )
MEDIA LLC, and CORNELIA )
EDUCATION LLC, )
                        )
        Defendants. )
_____)

DEPOSITION OF DALE BUCZKOWSKI

Taken on Saturday, August 13, 2022

By a Certified Court Reporter

Volume I

At 12:05 p.m.

At 400 South Seventh Street, Third Floor

Las Vegas, Nevada

Reported by: Carla N. Bywaters, CCR 866

A   Or are you asking me to recall a specific time in the 1990s that I may have ingested some drug?  Is that your question?

Q   No, I'm not asking about a specific time.  I'm not asking you about a date or a time.  I'm saying that most human beings can tell you, "I have used cocaine or I haven't used cocaine."  Have you ever used cocaine?

A   I don't recall a specific time using cocaine.

Q   Have you ever used marijuana?

A   I think I may have smoked marijuana as a teenager a couple of times.

Q   Have you ever bought or sold it?

A   No.

Q   But Mr. Mulvehill did accuse you of that?

THE WITNESS:  I've never been --

MR. VOCKRODT:  Objection.  Form.

THE WITNESS:  I've never been convicted of a drug crime.  I've never been charged with a drug crime. I've never been arrested for a drug crime.  The things Mr. Mulvehill says or the things that your client said and published are false.

BY MR. RANDAZZA:

Q   What did my client said?

A   He supported these same assertions and published them.

FER-021

Q   So what are these accusations?

A   Review the video on specifics.

Q   Well, you filed two federal lawsuits over it, sir.  You can't recall what offended you so much to file a federal lawsuit?

MR. VOCKRODT:  Objection.  Form.

BY MR. RANDAZZA:

Q   Answer.

A   Things that were said are defamatory.  Things that were said were harmful to my reputation.  Do I remember the specific word-for-word quote?  No, I don't.  But I believe your client asserts and published that I was involved in -- that I was charged with drug crimes, and it was a matter of public record.  I believe that's his assertion.

Q   They were charging you?

A   No.  I believe he says that it's a matter of public record, that I was either charged or convicted of drug crimes.  I believe convicted, but again I don't know the details.  We'd have to refer back to your client's videos where he published to the world that were reviewed by many people that caused harm to my reputation when he said those untrue things about me.

Q   Did somebody refuse to do business with you because they thought you didn't graduate from the

TAMARA BEATTY PETERSON, ESQ., Bar No. 5218
tpeterson@petersonbaker.com
NIKKI L. BAKER, ESQ., Bar No. 6562
nbaker@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone:  702.786.1001
Facsimile:  702.786.1002

*(Additional counsel listed in signature block.)*

*Attorneys for Plaintiffs Wealthy Inc. and*
*Dale Buczkowski*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WEALTHY INC. and DALE BUCZKOWSKI,<br><br>          Plaintiffs,<br><br>v.<br><br>SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC,<br><br>          Defendants. | Case No.:  2:21-cv-01173-JCM-EJY<br><br>**RESPONSE IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660 AND MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED PURSUANT TO LR 78-1** |

Plaintiffs Wealthy Inc. and Dale Buczkowski ("Plaintiffs") hereby file their Response in Opposition to Defendants' Special Motion to Dismiss Pursuant to NRS 41.660 and Motion for Summary Judgment [ECF No. 61 and ECF No. 62][1].

**I.      INTRODUCTION**

Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC (collectively, "Defendants") ask the Court to grant summary judgment in their favor on all of Plaintiffs claims for relief, each based on Defendants publication of defamatory and disparaging statements on their promotional YouTube channel, a conduit for the accumulation of business. However, the Court cannot say, as a matter of law, that Plaintiffs' claims for relief fail.

---

[1] Defendants filed two identical briefs as ECF No. 61 and ECF No. 62.  For brevity, Plaintiffs will reference ECF No. 61 in this Response.

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

FER-023

printout from the "derekmoneyberg" Instagram account dated February 11, 2022, over a year after the statements were published. (*Id.*)  They additionally cite to Mr. Buzkowski's deposition where he was asked if he has four million followers and he replied, "I do *currently*."  (Ex. 2 to Motion [ECF No. 61-1] at 119:11-13) (emphasis added.)

Likewise, Defendants reference a printout of the Derek Moneyberg YouTube page to demonstrate it "has over 130,000 subscribers," but the printout is dated April 4, 2022, over a year after the statements were published.  (Motion [ECF No. 61] at 10:13-15.)  Defendants' attempt to inflate Plaintiffs' popularity to suggest they are public figures is belied by their citation to the Complaint when Plaintiffs' YouTube channel had approximately 23,700 subscribers.  (Motion [ECF No. 61] at 9:25-27.)

Next, Defendants attach the third-party hearsay of Reddit posts in support of allegations that Mr. Buczkowski "had an arrest record," "is a scammer," and "that he does not have a real degree from a university."  (Motion [ECF No. 61] at 11:5-15.)  In addition to being inadmissible hearsay evidence (*see* Section II, *supra.*), Defendants ignore that the Reddit exhibits have a post stating that "Derek Moneyberg does have a University of Chicago MA Business Administration degree."  (*See* Exhibit 8 to Motion [ECF No. 61-3] at 51.)

**B.**      **Mr. Buczkowski was Not Involved in an Illegal Marijuana Grow Operation.**

After describing the circumstances of a civil forfeiture case in which Mr. Buczkowski allegedly filed a claim for property, Defendants state that they "interpreted these facts to mean that Plaintiff Buczkowski had knowledge of, and was likely involved in, an illegal marijuana grow operation, even if he was not arrested for his knowledge and involvement."  (Motion [ECF No. 61] at 13:2-4.)  Defendants' declaration that they unreasonably "interpreted" that Mr. Buczkowski was involved in an illegal marijuana grow operation, even though no law enforcement agency came to the same conclusion, is a matter for argument, not for a section of undisputed facts.  Plaintiffs adamantly dispute these facts as demonstrated by Plaintiff Buczkowski's testimony: "I've never been convicted of a drug crime.  I've never been charged with a drug crime.  I've never been arrested for a drug crime.  The things Mr. Mulvehill says or the things that your client said and published are false."  (Excerpts of Deposition of Dale Buczkowski, Ex. 1, at 20:17-21.)

**PETERSON BAKER, PLLC**
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

5

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

…

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 USC § 1125(a)(1)

The 9th Circuit has adopted the following definition to identify "advertising" or "promotion": (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public. *Ariix, LLC v. Nutrisearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

### 1.    The videos Defendants published were commercial speech.

Although commercial speech is "usually defined as speech that does no more than propose a commercial transaction," "courts view this definition as just a starting point." *Ariix, LLC v. Nutrisearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021). The Ninth Circuit provided guideposts that provide "strong support that the speech should be characterized as commercial speech … [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." *Id.* at 1115-16 (citing cases). Each of these criteria is met, here, and the statements Defendants published are commercial speech and the Court should deny the Motion.

### a.    The publication of the statements included advertisements.

Addressing the first guidepost, one court noted that "[i]n some cases, it may be obvious whether statements were made in advertising or promotion. Yet … communications need not necessarily resemble traditional television, radio, print, or Internet advertisements to fall within the purview of the Lanham Act." *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 799 (6th Cir. 2015).

Defendants claim that "[t]here is not a single mention of Defendants' goods or services." (Motion [ECF No. 61] at 15:21-23.) This is not true. First, Defendants utilized their platform on

11

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

FER-025

YouTube to advertise their products and services by promoting Defendant Cornelia's House Hack Expert book and First 1,000 Subscribers mentoring program on Spencer Cornelia's YouTube channel. (Spencer Cornelia YouTube About Page, Ex. 4.) Additionally, Mr. Cornelia's real estate business was also referred to in the First Video:

> SPENCER CORNELIA:· By the way, he has shared the screenshots with me.· We are talking about someone who knows nothing about a topic, is asked to research the topic, and then they write the copy for this program as a real estate riches or a stock market –
> JOHN ANTHONY:· Yeah.
> SPENCER CORNELIA:· -- mastery.
> JOHN ANTHONY:· And it -- and it pisses you off, too, because you do some real estate stuff on the side.· And here you have --
> SPENCER CORNELIA:· Right.

(Ex. 2 at WEALTHY000062).

The Ninth Circuit has recognized that although social media posts "may not have the indicia of a traditional advertisement, there can be little doubt that these paid posts are in fact advertisements." *Ariix*, 985 F.3d at 1116. Despite its non-traditional format, Defendants' promotion on their YouTube channel of their House Hacking Expert e-book, the First 1,000 Subscribers program, and the monthly membership for coaching is an advertisement. Defendants' advertisement and promotion of their services on their YouTube channel were indicative of commercial speech and the Court should deny the Motion as it relates to Plaintiffs' claims under the Lanham Act.

**b.** **The statements disparage Plaintiffs' particular product of wealth coaching.**

Plaintiff Buczkowski owns and operates Wealthy Inc. which "is a leading entrepreneurship, finance, business, real-estate and self-improvement company." (*See* Section IV(B), *supra*.) Mr. Buczkowski operates the business under the federally registered trademark, Derek Moneyberg®. (*Id.*) That is, Plaintiffs' product *is* the services it provides in coaching on finance, business, and real-estate.

The second guidepost to characterizing statements as commercial speech is that the speech refers to a particular product. *Ariix, LLC.*, 985 F.3d at 1115-16. Defendants' assert that "criticisms of Buczkowski alone [] do not relate to Plaintiffs' goods or services." (Motion at 23:23-25.)

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

12

However, Defendants undermine that assertion by conceding that the "videos primarily consist of Mulvehill discussing how Buczkowski and his various services are ineffective and that he makes false promises in the hope of having customers purchase increasingly expensive services." (Motion at 10:8-10.) Defendants also concede that Mr. Cornelia stated that "Derek Moneyberg fits all of the checkboxes for scammer of the year." (Motion [ECF No. 61] at 12:11-12.)

The videos are littered with statements about Plaintiffs' services demonstrative of commercial speech. A few examples include:

> JA: … he said he's trained his sales team on how to get guys basically predatory loans.
> SC: By the way, there's a – like the seminar – people who run seminars do this, apparently. Where, like, in person, they'll have you call the bank and, lie about your income … I wouldn't be surprised if they do the same thing.

(Ex. 2 at WEALTHY000069.)

> JA: what he's saying is that tons of guys that couldn't afford it are getting signed up for credit cards and loans that they – that they know for a fact they can't repay, okay, which is illegal. … they say, Okay, now perfect, you have a 10k line. You can get into these two mentorships.

(Ex. 2 at WEALTHY000070.)

> JA: Now they've got a 19-year-old doing research on real estate investing to same people on a real estate course …And the real estate ones come out in January. And this is going to be keep [sic] going. Yeah, he's obviously just making a f-ing scam and shit.

These false accusations that Wealthy sales team members coerce customers to get credit cards just to purchase their mentorship programs are disparaging to Plaintiffs' services. Likewise, the statements that the Wealthy real estate program is a scam disparages the particular product of real estate coaching and is demonstrative of commercial speech. *Ariix, LLC v. Nutrisearch Corp.*, 985 F.3d at 1115 (9th Cir. 2021).

Because Defendants have conceded that they published statements that attack the products, namely financial and business coaching, of Wealthy, the statements are properly characterized as commercial speech and the Court should deny the Motion as to the claims under the Lanham Act.

> **c.      Defendants were economically motivated to take clients from Plaintiffs.**

The intersection of Defendants' advertisements and their publication of statements about Plaintiffs' services is where Defendants' motivation is apparent. First, both the House Hack Expert program and the First 1,000 Subscribers program solicit donations, providing five different methods

13

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

to make payments to Defendants.  (First 1,000 Subscribers, Ex. 5, at WEALTHY000016; House Hack Expert, Ex. 6, at WEALTHY00007.)  Second, each of the programs advertises a monthly membership program providing members access to a private Discord[4] community, monthly coaching calls, and answers to all questions.  (Ex. 5 At WEALTHY000016; Ex. 6 at WEALTHY00007; *see also* Excerpts of Deposition of Spencer Cornelia, Ex. 7, at 14:14-25 ("I also had a hundred dollar membership for – you would get access to the e-books and then chat with me if you wanted to talk about the contents of the e-books.").)  Third, "[w]hen ads are played on [Defendants'] videos and an audience member watches the ads, [Defendants] get paid." (Ex. 7, at 15:8-12.)

By releasing videos that disparage Plaintiffs and discredit their business, coupled with offering the same services, Defendants stand to profit.  That is, someone watching the videos and deciding not to use Plaintiffs' services can just click a button on the same web page and obtain similar services from Defendants.  (*See* Ex. 4; *see also* Ex. 7 at 40:7-10 (when asked if he publishes information about his house hacking program on YouTube, Mr. Cornelia testifying "I have made videos about it, yes.  I have made, I believe two videos on the topic.")  Defendants had economic motivation to publish the videos containing defamatory and disparaging statements and said statements are properly characterized as commercial speech.  Because Defendants cannot demonstrate that, as a matter of law, the statements they published were not commercial speech, the Court should deny the Motion as it relates to Plaintiffs' Lanham Act claim for relief.

### *2.      Defendants are in Commercial Competition with Plaintiffs.*

Defendants are in direct commercial competition with Plaintiffs, who Defendants state, in their LR 56-1 Statement of Facts, are "a leading entrepreneurship, finance, **real-estate** and self-improvement company." (Motion [ECF No. 61] at 9:19-20) (emphasis added.)  That is, Defendants' House Hack Expert e-book is a real estate program in competition with Plaintiffs.  It specifically addresses "[a] common worry throughout real estate investing communities [as to] how their

---

[4] Discord is a VoIP and instant messaging social platform where users have the ability to communication    with    voice    calls,    video    calls,    and    text    messaging. https://en.wikipedia.org/wiki/Discord (last visited October 27, 2022).

specific strategy will work in various market conditions." (Ex. 6 at WEALTHY00008.) The attacks in the videos attacked Plaintiffs' real estate business as evidenced by the published statement calling Plaintiffs' "real estate course … a f-ing scam." (Ex. 2 at WEALTHY000072.) The videos disparaging Plaintiffs' real estate course were released on the same YouTube page where Defendants advertise their House Hack Expert real estate e-book.

### 3. Defendants Published the Videos to Influence Consumers to Purchase Defendants' Services Instead of Plaintiffs'.

The third factor in characterizing whether speech is an advertisement or promotion requires that it influences consumers to purchase the products of the publisher. *Ariix, LLC v. Nutrisearch Corp.*, 985 F.3d at 1115. By publishing statements that mischaracterize Plaintiffs' services as "scams," Defendants influenced their viewers to look for an alternative program for real estate mentorship. (Excerpts of Deposition of Spencer Cornelia, Ex. 7, at 89:7-24) ("Q. in these videos, did you mention any of – any of the products that you offer to third parties … for sale? A. I believe I did, yes … There are two e-books. One is on house hacking, the other is on the first 1,000 subscribers for growing a channel on YouTube.") Because the statements that Defendants published attacked Plaintiffs' services (*see* Section VI(A)(1), *supra.*); because Defendants had economic motivation to publish the videos containing the defamatory and disparaging statements (*see* Section VI(A)(1), *supra.*); and because Defendants are in commercial competition with Plaintiffs (*see* Section VI(A)(2), *supra.*), Plaintiffs' claim for relief under the Lanham Act does not fail as a matter of law and the Court should deny the Motion.

### 4. Defendants Sufficiently Disseminated the Videos to the Relevant Purchasing Public.

The fourth factor in characterizing whether speech is an advertisement or promotion is whether it is sufficiently disseminated to the relevant purchasing public. Defendants concede that Mr. Cornelia published the First and Second videos on his YouTube channel. (Ex. 7, at 81:1-16.) Additionally, Defendants concede that "[t]here is no dispute that the statements at issue were made in a place open to the public or a public forum." (Motion [ECF No. 61] at 29:14-15.) Because Defendants are in competition with Plaintiffs, (*see* Section VI(A)(2), and because Defendants

15

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

solicit sales on their YouTube page, (*see* Section VI(A)(3), the undisputed public forum where Defendants published the videos was a *relevant* purchasing public.  After all, Defendants broadcast through YouTube on real estate as demonstrated by Spencer Cornelia's testimony when he stated that "house hacking … is something that I consider myself an expert in."  (Ex. 7 at 39:17-19.)

**B.     Defendants Failed to Show, by a Preponderance of the Evidence, that Plaintiffs Claims are Based upon a Good Faith Communication in Furtherance of the Right to Free Speech in Connection with an Issue of Public Concern.**

To invoke the anti-SLAPP statute, a defendant must satisfy the first prong by showing "by a preponderance of the evidence that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."  NRS 41.660(3)(a); *see* Section V(B), *supra.*

**1.     *Defendants Published Statements that Did Not Have a Direct Connection to an Issue of Public Interest***

The relevant category for the Court's analysis is that found within NRS 41.637(4) which includes a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum."

Defendants suggest that the community of people who "have heard of Plaintiffs" "has a significant interest in hearing about how Plaintiffs are scamming their customers."  (Motion [ECF No. 61] at 29:7-9.)  Attempting to link the statements to their stated matter of public interest, Defendants assert that the "statements in the Videos *primarily* concern Plaintiffs' credibility as a businessman, *potential* ethical and legal problems with the services they provide, and the quality of services they provide."  (*Id.* at 29:3-5) (emphasis added.)  This is not a recognizable public interest, and the Court should deny the Motion on that basis alone.  *See Kevin Zhang Inc. v. Rozsa*, No. 2:20-CV-6247-SVW, 2021 WL 1570837, at *3 (C.D. Cal. Jan. 27, 2021) ("It is true that statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest.  Here, by contrast, [defendant] made all of his statements on YouTube videos [not] on a consumer watchdog website or to a consumer protection bureau.")

Even if the Court were to find Defendants established a legitimate public interest (they did not), Defendants ignore the multiple damaging statements they published which have *no* link,

16

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

whatsoever, to their stated public interest. First, Defendants published statements that Mr. Buczkowski was lying about his MBA from the University of Chicago. (*See* Section IV(C), *supra.*) These statements were not a matter of concern to a substantial amount of people, nor do they have a degree of closeness to Defendants' stated public interest in scamming; Defendants cannot take shelter under the anti-SLAPP statutes. *Coker v. Sassone*, 135 Nev. 8, 13, 432 P.3d 746, 750 (2019) (quoting *Shapiro v. Welt*, 133 Nev. 35, 39, 389 P.3d 262, 268 (2017)) ("there should be some degree of closeness between the challenged statements and the asserted public interest.")

Second, Defendants published statements that insinuated that Plaintiff Buczkowski used one of his businesses for money laundering. (*See* Section IV(C), *supra*.) These defamatory statements have no link to Defendants' asserted public interest of scamming and they do not fall under the protection of an the anti-SLAPP statutes. *Id.* ("there should be some degree of closeness between the challenged statements and the asserted public interest.")

Third, Defendants published statements that Plaintiff Buczkowski "must have been running a drug operation." (*See* Section IV(C), *supra*.) Not only are the false and defamatory statements unrelated to Defendants' stated public interest in "scamming," they also only relate to a matter of mere curiosity which do not rise to the level of public interest. *Coker*, 135 Nev. at 8, 432 P.3d at 750 ("public interest does not equate with mere curiosity."). That is, the allegations of drug involvement are gossip, not topics involving entrepreneurship, business or real-estate. These statements have no connection with an issue of public interest and, thus, cannot enjoy anti-SLAPP protection. *Id.*; NRS 41.637(4).

Fourth, Defendants published statements alleging that "they came after me trying to set me up for an arrest." (*See* Section IV(C), *supra*.) The statements accusing Plaintiffs of setting up non-party Mr. Mulvehill for his arrest have no degree of closeness to the issue of scamming. *See Coker*, 135 Nev. at 13, 432 P.3d at 750 ("there should be some degree of closeness between the challenged statements and asserted public interest."). Further, the circumstances of Mr. Mulvehill's arrest are a matter of concern only to himself and a small audience and are not an issue of public concern. *Id.* ("a matter of public interest should be something of concern to a substantial number of people;

17

FER-031

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest.")

Fifth, Defendants published statements that Plaintiff Buczkowski had a "link" to the death of the woman who was connected to the crimes for which Mr. Mulvehill was arrested. (*See* Section IV(C), *supra.*) There is no degree of closeness between these defamatory statements and Defendants' asserted public interest in scamming. *See Coker*, 135 Nev. at 13, 432 P.3d at 750 ("there should be some degree of closeness between the challenged statements and asserted public interest.").

Defendants failed to meet their burden under the first prong because they did not demonstrate that the statements have a direction connection to a matter of public interest and the Court should deny their Motion. *See Coker*, 135 Nev. at 13, 432 P.3d at 750 ("there should be some degree of closeness between the challenged statements and asserted public interest.").

### 2.    *The Published Statements Were False and Were Not Made in Good Faith.*

In conclusory fashion, Defendant Cornelia informs the Court that he "published the videos in good faith" because he "did not know or believe any statement in any of the videos at issue, whether uttered by him or Mulvehill, was false." (Motion [ECF No. 61], at 30:9-16.) However, Defendants' assertion does not satisfy their burden under the first prong because "the relevant inquiry in prong one of the anti-SLAPP analysis is whether a preponderance of the evidence demonstrates that … the statements were made in good faith under the anti-SLAPP statute because the gist or sting of the statements were substantively true." *Rosen*, 135 Nev. at 1224, 453 P.3d at 440 (citations and quotations omitted).

### a.    The statements were false.

Here, Defendants do not claim, much less demonstrate, that the statements they published were true. *See Barret v. Rosenthal*, 40 Cal.4th 33, 45, 146 P.3d 510, 517 (2006) ("Publication is a necessary element of all defamation claims, and includes every repetition and distribution of a defamatory statement."); (Motion [ECF No. 61], at 29:16-30:16.) Additionally, Defendants do not claim that the gist or the sting of the statements were substantively true. *Rosen*, 135 Nev. at 1224, 453 P.3d at 440 (citations and quotations omitted). Rather, they simply state that they "did not

18

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

know or believe any statement … was false." (Motion [ECF No. 61], at 30:9-10.)  In defense of their ignorance of the truth, Defendants assert that Mr. Cornelia "reviewed significant evidence provided by Mulvehill regarding Plaintiffs and their business practices, in addition to his own research concerning Mulvehill's claims, and found Mulvehill and his sources to be credible.  (Ex. 7 at 7:16-10:3, 45:6-10, 74:2-80:9, 81:1-85:4, 86:3-87:12.)  In support of Mr. Cornelia's assertion that he "reviewed significant evidence provided by [Mr.] Mulvehill," conducted "his own research concerning [Mr.] Mulvehill's claims, and found Mulvehill and his sources to be credible," Defendants cite to Mr. Cornelia's deposition which includes some of the following supporting testimony:

> Q. And what research did you conduct into Stacey Lynn Saunders?
> A. **So I was not able to access that information.**
> (*Id.*, at 78:5-79:11) (emphasis added.)

> Q. Why didn't anything that [Mr. Mulvehill] said … seem implausible?
> A. Well, for first, his "lay count," as he words it … I found that to be an accurate number …
> (*Id.*, at 79:15-80:9.)

> Q. Okay … did you perform any – any research to verify any of the statements or the claims that Mr. Mulvehill made?
> A. So on his videos there's … numerous comments being left about the plaintiffs on those specific videos.  You also had Reddit posts …
> Q. Okay.  And these statements from these other people … were they consistent with what Mr. Mulvehill said to you or in his prior videos?
> A. Not everything specifically, of course, but were – was there an indication that there was a lot of things going on with the business that weren't favorable or positive?  Aboslutely.
> (*Id.*, at 85:5-86:2) (emphasis added.)

> Q. … did you perform any research into whether Mr. Buczkowski did have those education credentials?
> A. No, because I found it irrelevant …
> (*Id.*, at 86:6-20.)

To sum up Mr. Cornelia's testimony in support of his belief that the statements were true: he found Mr. Mulvehill credible because he claimed to have slept with 1300 women and Mr. Cornelia believed it was true; he didn't research Mr. Buczkowski's education because he "found it irrelevant"; posts on Reddit and comments on YouTube videos did not specifically confirm the published statements but they provided "an indication" that Plaintiffs' business was not "favorable or positive"; and, regarding the statements that Mr. Buczkowski was linked to the death of a woman,

19

he was not "able to access that information" about the death of the woman. All of the statements published by Defendants were false and they did not satisfy their burden under the first prong of an anti-SLAPP motion and the Court should deny the Motion.

### b. The gist or sting of the statements were defamatory.

When looking at all of the false statements together, the gist or sting is not substantively true, and Defendants did not demonstrate by a preponderance of the evidence that they published them in good faith. *Rosen*, 135 Nev. at 1224, 453 P.3d at 440 (citations and quotations omitted) ("[T]he relevant inquiry in prong one of the anti-SLAPP analysis is whether a preponderance of the evidence demonstrates that … the statements were made in good faith under the anti-SLAPP statute because the gist or sting of the statements were substantively true.")

Defendants cite to *Williams v.* Lazer, 459 P.3d 93, 98 (2021), to demonstrate that they acted in good faith. (Motion [ECF No. 61] at 29:26-30:16.) Although the *Williams* court found that the defendant satisfied the first prong of an anti-SLAPP motion, that case is distinguishable from this case for several reasons.

First, the defendant in *Williams* made "generalized statements that [plaintiff] acted unethically and unprofessionally" and the court found those to be statements of opinion. *Id.* at 97. Here, Plaintiffs have identified specific statements of fact that Mr. Buczkowski lied about his education and was involved in money laundering and a drug operation; none of the statements in this litigation were generalized statements of opinion. (*See* Section IV(C), *supra.*)

Second, the defendant in *Williams* stated that she believed the statements were true "based on her experience with [plaintiff]." Here, when Mr. Cornelia was asked if he ever met Mr. Buczkowski, he stated: "I have not." (Ex. 7 at 72:19-20.) And, when asked what research he conducted on Plaintiffs, he stated that "I did, probably, a google search of Derek. It wouldn't have been anything more than that." (*Id.* at 21:7-10.) Unlike the defendant in *Williams*, Defendants had no first-hand experience to support the statements. The defendant in *Williams* provided an affidavit describing specific experiences that she had with the plaintiff that showed that even if she did not know the falsity of *some* of the statements, her first-hand experiences with plaintiff demonstrated that the gist of the statements was substantively true. *Williams*, 459 P.3d at 98. Here, Defendants

20

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

Marc J. Randazza, NV Bar No. 12265
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendants
Spencer Cornelia, Cornelia Media LLC,
and Cornelia Education LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WEALTHY INC. and DALE BUCZKOWSKI, | Case No. 2:21-cv-01173-JCM-EJY |
| Plaintiff, | |
| v. | |
| SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC, | |
| Defendants. | |

### DEFENDANTS' SPECIAL MOTION TO DISMISS

### PURSUANT TO NRS 41.660 AND MOTION FOR SUMMARY JUDGMENT

FER-035

RANDAZZA | LEGAL GROUP

## TABLE OF CONTENTS

**1.0   INTRODUCTION** ........................................................................................**1**

**2.0   FACTUAL BACKGROUND AND LR 56-1 STATEMENT OF FACTS** ..................**1**

2.1   PLAINTIFFS' STATUS AS PUBLIC FIGURES..........................................................1

2.2   BUCZKOWSKI'S INVOLVEMENT IN AN ILLEGAL MARIJUANA GROW OPERATION..............4

2.3   LARSON CONSULTING ...................................................................................5

2.4   THE STATEMENTS AT ISSUE ..........................................................................6

2.4.1   The First and Second Videos ...............................................................6

2.4.2   The Third Video ..................................................................................12

**3.0   LEGAL STANDARD** .................................................................................**12**

**4.0   ARGUMENT** .............................................................................................**13**

4.1   PLAINTIFFS' LANHAM ACT CLAIM FAILS AS A MATTER OF LAW ..................................13

4.1.1   The Complained-of Statements are Not Commercial Speech ...................14

4.1.1.1 The Complained-of Statements Were Not "Advertisements"................15

4.1.1.2 The Complained-of Statements Do Not Refer to a Particular Product of Defendants ..........................................................................16

4.1.1.3 Defendants Did Not Have an Economic Motivation...........................16

4.1.2   The Complained-of Statements Were Not Made to Influence Consumers to Purchase Defendants' Goods or Services...................................17

4.1.3   The Complained-of Statements Were Not Sufficiently Disseminated to the Relevant Purchasing Public ..................................................18

4.2   DEFENDANTS' SPEECH IS PROTECTED UNDER THE ANTI-SLAPP STATUTE ...................19

4.2.1   Defendants' Speech - Directly Connected to an Issue of Public Interest..................19

4.2.2   Defendants' Speech was Published in a Public Forum ...........................21

4.2.3   Defendants' Speech was Made in Good Faith.......................................21

4.3   PLAINTIFFS' DEFAMATION CLAIM FAILS AS A MATTER OF LAW ..................................22

RANDAZZA | LEGAL GROUP

FER-036

4.3.1    Defendants are Not Even Potentially Liable for the Majority of the Statements......22

4.3.2    The Statements are Not Capable of Being Defamatory .............................................23

4.3.2.1 Statements Regarding Alleged Money Laundering..............................................24

4.3.2.2 Statements Regarding Buczkowski's Involvement in an Illegal Drug
Operation .....................................................................................................25

4.3.2.3 Statements Regarding Plaintiffs' Business Practices ...........................................25

4.3.2.4 Cornelia Nominating Buczkwoski for the "Charlatan of the Year" Award ..........26

4.3.3    Plaintiffs are Public Figures and Must Satisfy the Actual Malice Standard .............26

4.3.4    Defendants Did Not Publish with Actual Malice ......................................................27

4.4    THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS........................29

4.5    PLAINTIFFS' BUSINESS DISPARAGEMENT CLAIM FAILS AS A MATTER OF LAW.............30

5.0    CONCLUSION ........................................................................................................30

## TABLE OF AUTHORITIES

**CASES**

*Abrams v. Sanson*,
458 P.3d 1062 (Nev. 2020).....................................................................................21

*Alam v. Reno Hilton Corp.*,
819 F. Supp. 905 (D. Nev. 1993)...........................................................................29

*Alfasigma USA, Inc. v. First Databank, Inc.*,
525 F. Supp. 3d 1088 (N.D. Cal. 2021)..................................................................17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................................................13

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021).....................................................................13, 14, 18

*Ayyadurai v. Floor64, Inc.*,
270 F. Supp. 3d 343 (D. Mass. 2017).....................................................................26

*Balzaga v. Fox News Network, LLC*,
173 Cal. App. 4th 1325 (2009)...............................................................................24

*Bolger v. Young Drugs Prods. Corp.*,
463 U.S. 60 (1983) ...........................................................................................14, 16

*Bongiovi v. Sullivan*,
122 Nev. 556 (2006)...............................................................................................26

*Bose Corp. v. Consumers Union*,
466 U.S. 485 (1984) ...............................................................................................27

*Bosely Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005)..................................................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................................13

*Chehade Refai v. Lazaro*,
614 F. Supp. 2d 1103 (D. Nev. 2009).....................................................................29

*Children's Health Def. v. Facebook Inc.*,
2021 U.S. Dist. LEXIS 121314 (N.D. Cal. June 29, 2021)....................................14

*Church of Scientology v. Wollersheim*,
42 Cal. App. 4th 628 (1996)...................................................................................19

RANDAZZA | LEGAL GROUP

FER-038

*Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*,
125 Nev. 374 (2009) ...................................................................................................30

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) .................................................................................14, 18

*Coker v. Sassone*, 432 P.3d 746 (Nev. 2019) .................................................................13

*Cole v. Patricia A. Meyer & Associates*,
206 Cal. App. 4th 1095 (2012) ....................................................................................21

*Corsi v. Infowars LLC*,
No. A-20-CV-298-LY, 2021 U.S. Dist. LEXIS 98486 (W.D. Tex. May 24, 2021) ...........15, 23

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ....................................................................................................13

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ......................................................................................16

*Exeltis United States, Inc. v. First Databank, Inc.*,
520 F. Supp. 3d 1225 (N.D. Cal. 2021) .......................................................................17

*Farah v. Esquire Mag.*,
736 F.3d 528 (D.C. Cir. 2013) ....................................................................................14

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) .........................................................................................18

*Flowers v. Carville*,
310 F.3d 1118 (9th Cir. 2002) .....................................................................................23

*Fox Searchlight Pictures, Inc. v. Paladino*,
89 Cal. App. 4th 294 (2001) .......................................................................................19

*Geiser v. Kuhns*, No. S262032,
2022 Cal. LEXIS 5120 (Cal. Aug. 29, 2022) ................................................................20

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ...................................................23, 26

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
859 F. Supp. 1521 (S.D.N.Y. 1994) .............................................................................16

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2009) ......................................................................................19

*Hunt v. City of L.A.*,
638 F.3d 703 (9th Cir. 2011).......................................................................................14

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) ............................................................................................29, 30

*Information Control Group v. Genesis One Computer*,
    611 F.2d 781 (9th Cir. 1980) ...................................................................................24

*Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*,
    No. 2:14-CV-424 JCM (NJK), 2016 U.S. Dist. LEXIS 101028 (D. Nev. Aug. 2, 2016).........13

*Lewis v. Time, Inc.*,
    710 F.2d 549 (9th Cir. 1983) ...................................................................................24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...........................................................................................14, 16

*Maduike v. Agency Rent-A-Car*,
    114 Nev. 1 (1998) ....................................................................................................29

*Maffick LLC v. Facebook, Inc.*,
    No. 20-cv-05222-JD, 2021 U.S. Dist. LEXIS 89930 (N.D. Cal. May 11, 2021)...............13, 18

*Makaeff v. Trump Univ., LLC*,
    26 F. Supp. 3d 1002 (S.D. Cal. 2014) ......................................................................27

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ................................................................................................23

*Morningstar, Inc. v. Superior Court*,
    23 Cal. App. 4th 676 (1994)....................................................................................24

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) .................................................................................18

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008)................................................................................19

*Olivero v. Lowe*,
    116 Nev. 395 (2000) ................................................................................................29

*Pegasus v. Reno Newspapers, Inc.*,
    118 Nev. 706 (2002)...............................................................................22, 23, 26, 27

*Phantom Touring v. Affiliated Publ'ns*,
    953 F.2d 724 (1st Cir. 1992).............................................................................23, 26

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013)....................................................................20

RANDAZZA | LEGAL GROUP

*Planned Parenthood Fed'n of Am. v. Ctr. For Med. Progress,*
890 F.3d 828 (9th Cir. 2018) ............................................................................................13

*Procter & Gamble Co. v. Amway,*
242 F.3d 539 (5th Cir. 2001) ............................................................................................16

*Reader's Digest Assn. v. Superior Court,*
690 P.2d 610 (Cal. 1984) ..................................................................................................27

*Rosen v. Tarkanian,*
453 P.3d 1200 (Nev. 2019) ...............................................................................................21

*Rosenaur v. Scherer,*
88 Cal. App. 4th 260, 105 Cal. Rptr. 2d 674 (2001) .........................................................26

*Shapiro v. Welt,*
133 Nev. 35 (2017) ...........................................................................................................20

*Sipple v. Foundation For Nat. Progress,*
71 Cal. App. 4th 226 (2d Dist. 1999) ...............................................................................19

*St. Amant v. Thompson,*
390 U.S. 727, 731 (1968) ..................................................................................................27

*Star v. Rabello,*
97 Nev. 125 (1981) ...........................................................................................................29

*Stark v. Lackey,*
458 P.3d 342 (Nev. 2020) .................................................................................................19

*Stewart v. Rolling Stone LLC,*
181 Cal. App. 4th 664 (1st Dist. 2010) .............................................................................19

*Tobinick v. Novella,*
848 F.3d 935 (11th Cir. 2017) ....................................................................................15, 16

*U.S. Real Properties Located at 7215 Longboat,*
750 F.3d 968 (8th Cir. 2014) ..............................................................................................4

*Underwager v. Channel 9 Australia,*
69 F.3d 361 (9th Cir. 1995) ..............................................................................................27

*United States v. United Foods, Inc.,*
533 U.S. 405, 121 S. Ct. 2334, 150 L. Ed. 2d 438 (2001) ................................................14

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
425 U.S. 748 (1976) ..........................................................................................................16

FER-041

*Williams v. Lazer,*
459 P.3d 93 (Nev. 2021) ..............................................................................21, 22

*Wynn v. Smith,*
117 Nev. 6 (Nev. 2001) .....................................................................................22


**STATUTES**

15 U.S.C. § 1117 .............................................................................................18, 30

15 U.S.C. § 1125 .............................................................................................13, 18

Cal. Code Civ. Proc. § 425.16 ............................................................................13

NRS 41.637 ....................................................................................................12, 21

NRS 41.660 ..........................................................................................................12


**RULES**

Fed. R. Civ. P. 56...........................................................................................12, 13


**OTHER AUTHORITIES**

Restatement (Second) Torts § 566 cmt. c (1977) ...............................................24

FER-042

## DEFENDANTS' SPECIAL MOTION TO DISMISS

## PURSUANT TO NRS 41.660 AND MOTION FOR SUMMARY JUDGMENT

Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC (collectively, "Defendants") hereby file their Special Motion to Dismiss Pursuant to NRS 41.660 and Motion for Summary Judgment.

### 1.0    INTRODUCTION

Plaintiffs brought a frivolous lawsuit based on protected speech not against the party who actually uttered the allegedly actionable statements, but rather against the people who allowed him to speak. Defendants did not utter the vast majority of allegedly actionable statements. Even if they had, most of the statements are expressions of protected opinion and none of them constitute commercial speech. And even as to potentially factual statements, Defendants did not publish their videos with actual malice. This suit must be dismissed, and Defendants should be awarded their costs and attorneys' fees under both Nevada's Anti-SLAPP law and the Lanham Act.

### 2.0    FACTUAL BACKGROUND AND LR 56-1 STATEMENT OF FACTS

#### 2.1    Plaintiffs' Status as Public Figures

Plaintiffs' Complaint contains sufficient allegations to show they are at least limited-purpose public figures. Plaintiff Buczkowski "previously served as an Executive Coach and member of the Board of Directors of Real Social Dynamics, the **world's largest dating coaching company**, since November 2003." (ECF No. 1 at ¶ 13) (emphasis added). Plaintiff Wealthy "is a leading entrepreneurship, finance, business, real-estate and self-improvement company owned and operated by Mr. Buczkowski, who operates the business under the federally registered trademark, Derek Moneyberg." (*Id*. at ¶ 15). It offers "training programs to its clients" which prominently feature the name "Derek Moneyberg" and "focus on entrepreneurship, financial markets, and real-estate investing" at various price points going as high $75,000 for "1-ON-1 Training" for some applicants. (*Id*. at ¶¶ 16-19). Wealthy "actively markets its courses on various social media channels," its "Derek Moneyberg" YouTube channel "has approximately 23.7K subscribers and over 1.2 million views … and targets an audience interested in self-improvement in the areas of

- 1 -
Anti-SLAPP Motion and Motion for Summary Judgment
2:21-cv-01173-JCM-EJY

FER-043

entrepreneurship, finance, business, and real-estate." (*Id*. at ¶¶ 20-21). Buczkowski "is focused on growing" clientele in these fields "through Wealthy and the Derek Moneyberg brand." (*Id*. at ¶ 22). In addition to his work in these fields, he "continues to provide services to his base of over one hundred and fifty clients in the dating and lifestyle niche …." (*Id*. at ¶ 23).

Aside from the allegations in the Complaint, using the Derek Moneyberg name, Plaintiffs own and operate an Instagram account with 4 million followers and claim to provide "[c]oaching 10,000+ in over 50 countries," showing they have a global presence in the wealth management and lifestyle coaching fields. (*See* "derekmoneyberg" Instagram account, produced as WEALTHY000482-587, attached as **Exhibit 1**; transcript of deposition of Dale Buczkowski ["Buczkowski Trans."], attached as **Exhibit 2**, at 87:4-13).

Plaintiffs' website lists Buczkowski's appearances on 35 different domestic, foreign, and international media outlets, including FOX News and ABC. (*See* home page of <moneyberg.com>, produced as COR000211-215, attached as **Exhibit 3**).[1] Plaintiffs' YouTube channel, "Derek Moneyberg," has over 130,000 subscribers. (*See* "Derek Moneyberg" YouTube channel, produced as COR000216-220, attached as **Exhibit 4**;[2] Buczkowski Trans. at 87:4-13). Media outlets and news stations, including Fox, Bloomberg, *Playboy*, and *Maxim* magazine, have written about Buczkowski and had him appear on their news programs and podcasts regarding his reputation as a wealth management coach, both before and after the statements at issue were published. (*See* printouts of media articles regarding Plaintiffs, produced as COR000221-256 & COR000298-467, attached as composite **Exhibit 5**; Buczkowski Trans. at 94:20-95:13). Plaintiffs paid for some of these articles and were approached by publications for others. (Buczkowski Trans. at 95:14-100:4).

Prior to using the Derek Moneyberg name, Buczkowski went by the name "RSD Derek" in connection with services he provided as an Executive Coach with Real Social Dynamics ("RSD"). (Buczkowski Trans. at 37:10-38:24). Cornelia was aware of Buczkowski's reputation

---

[1]   Available at: https://www.moneyberg.com/main (last accessed Sept. 30, 2022).
[2]   Available at: https://www.youtube.com/channel/UCfLdd3jn98YBnTfgFhzDx6w (last accessed Sept. 30, 2022).

with this company as far back as 2013. (Transcript of deposition of Spencer Cornelia ["Cornelia Trans."], attached as **Exhibit 6**, at 71:10-72:18). On the popular social media website Reddit, a search for the term "rsd derek" produces dozens of results, the majority of which are promoting Buczkowski's "dating coach" services, including his "Ten Commandments of Game." (*See* Reddit search results for "rsd derek," produced as COR000257-265, attached as **Exhibit 7**). Numerous third parties published statements on the internet claiming that Buczkowski had an arrest record, that he stole marketing material from others, that he plagiarizes others, that he is a scammer, that he acts suspiciously by hiding his face in marketing material, that he does not have a real degree from a university, that he lies about his wealth as a marketing tactic, and that the seminars he provides primarily consist of him trying to up-sell more expensive products. (*See* "In Defense of Derek Moneyberg" Reddit thread, produced as COR000266-267, attached as **Exhibit 8**;[3] *see* Feb. 24, 2019 Facebook post by John Anthony Lifestyle, produced as COR000268, attached as **Exhibit 9**;[4] "Ex-RSD Employee Tells All – Lies, Corruption, And Breaking Laws (RSD Insider Reveals Scams)," May 21, 2020, produced as COR000294-297, attached as **Exhibit 10**[5] (YouTube video interviewing RSD employee and discussing Buczkowski at 19:50 to 25:40); "DEREK MONEYBERG SCAMMED THIS KID FOR 35K" Reddit post, produced as COR000269-270, attached as **Exhibit 11**;[6] "Derek Moneyberg EXPOSED AGAIN" Reddit post, produced as COR000271-274, attached as **Exhibit 12**[7]).

---

[3]  Available at: https://www.reddit.com/r/FakeGuru/comments/kl2sbe/in_defense_of_derek_moneyberg/ (last accessed Sept. 30, 2022).

[4]  Available at: https://www.facebook.com/johnanthonylifestyles/photos/well-well-wellstraight-up-stealing-my-marketing-not-surprising-from-dale-buczkow/2227431124185374/ (last accessed Sept. 30, 2022).

[5]  Available at: https://www.youtube.com/watch?v=NrARs4LcmZM (last accessed Sept. 30, 2022).

[6]  Available at: https://www.reddit.com/r/FakeGuru/comments/kmdd58/derek_moneyberg_scammed_this_kid_for_35k/ (last accessed Sept. 30, 2022).

[7]  Available at: https://www.reddit.com/r/FakeGuru/comments/k3y8b1/derek_moneyberg_exposed_again/ (last accessed Sept. 30, 2022).

- 3 -
Anti-SLAPP Motion and Motion for Summary Judgment
2:21-cv-01173-JCM-EJY

**2.2     Buczkowski's Involvement in an Illegal Marijuana Grow Operation**

In October 2012, the United States filed a civil forfeiture action against property allegedly involved in a marijuana grow operation. *See United States of America v. Real Property Located at 7212 Longboat Drive, Johnston, Polk County, Iowa*, Case No. 4:12-cv-00484-RAW (S.D. Iowa). It dealt with property owned by the estate of Betty Mariani, Plaintiff Buczkowki's grandmother. The complaint alleged, *inter alia*, that Buczkowski's father was likely involved in a marijuana grow operation utilizing this property. (Complaint in Longboat Case (ECF No. 1), produced as COR000087-93, attached as **Exhibit 13**, at ¶¶ 11-14). It further alleged that a neighboring property, owned by Timothy Lantz, a friend of Buczkowski,[8] contained mail addressed to Plaintiff, credit cards in Plaintiff's name, Plaintiff's tax returns, and that the neighboring property was being used to operate a marijuana grow operation. (*Id*. at ¶¶ 15-20). A criminal complaint was filed against Mr. Lantz for his involvement in this operation. (Criminal complaint in *United States v. Lantz*, Case No. 4:12-MJ-216 (S.D. Iowa), produced as COR000102-115, attached as **Exhibit 14**). Buczkowski admits that he knows Lantz and that the DEA executed a search warrant at this property and found a marijuana grow operation there. (*See* Plaintiffs' responses to First Set of Requests for Admissions, attached as **Exhibit 15**, at Response Nos. 4 and 9-10).

Buczkowki, along with his mother and Mariani's estate, filed claims for the property, all of which were stricken on timeliness grounds, resulting in an appeal of the decision granting forfeiture of the properties. *See U.S. Real Properties Located at 7215 Longboat*, 750 F.3d 968, 971 (8th Cir. 2014). During this appeal, Buczkowki withdrew his claim and the court affirmed the judgment granting the requested forfeiture as to Buczkowski. *Id*. at 971 n.3. After the forfeiture was affirmed as to Buczkowki, the remaining claimants entered into a settlement to resolve the forfeiture claims. (Settlement Agreement in Longboat Case (Doc. No. 46), produced as COR000118-122, attached as **Exhibit 16**).

---

[8]    Buczkowski testified that he was a college roommate of Lantz. (Buczkowski Trans. at 72:1-73:21).

Defendants were aware of these facts before publishing the videos and statements at issue in this case. (Cornelia Trans. at 76:5-78:4). He interpreted these facts to mean that Plaintiff Buczkowski had knowledge of, and was likely involved in, an illegal marijuana grow operation, even if he was not arrested for his knowledge and involvement. (*Id.*; Declaration of Spencer Cornelia ["Cornelia Decl."], attached as **Exhibit 17**, at ¶ 14).

### 2.3    Larson Consulting

Larson Consulting Inc. is a Nevada corporation with only one officer, Dale Buczkowski. (Larson Consulting Nevada Secretary of State printout, produced as COR000142-000144, attached as **Exhibit 18**). According to Google Maps, there is no signage outside the building except for a "no soliciting" notice, but there are some vehicles outside it. (*See* Google Maps photograph for Larson Consulting address, produced as COR000133 & 141, attached as **Exhibit 19**). This is not surprising, because the address listed on the Secretary of State's website is inaccurate; in its tax returns, Larson Consulting claims to be located at 275 Glen Way, Incline Village, Nevada, Buczkowski's alleged home address. (*See* Buczkowski Trans. at 101:4-10, 147:14-23; 2019 and 2020 tax returns for Larson Consulting, produced as WEALTHY002694 & WEALTHY002707, attached as **Exhibit 20**).

The company has a Facebook page but has not posted any content since November 15, 2013 and has only 36 followers. (*See* Larson Consulting Facebook page, produced as COR000134-000140, attached as **Exhibit 21**).[9] The page lists a website, <larsonconsultinginc.com>, but the site is under construction and does not display any content. (*See* printout of <larsonconsultinginc.com>, produced as COR000150, attached as **Exhibit 22**; Buczkowski Trans. at 119:3-5, 142:20-143:12).

Defendants were aware of this information prior to publishing any of the videos or statements at issue in this case. (Cornelia Trans. at 83:15-85:4; Cornelia Decl. at ¶ 10). Based on this information, Defendants did not believe Larson Consulting was a legitimate business, as it did

---

[9]    Available at: https://www.facebook.com/Larson-Consulting-Inc-133330896858033/?ref=page_internal (last accessed Sept. 30, 2022).

FER-047

not appear to provide any goods or services to the public. (Cornelia Decl. at ¶ 13). Considering the numerous allegations surrounding Buczkowski of shady business practices and hiding both his wealth and identity, Defendants believed there was a strong chance Larson Consulting was a front used for an improper purpose, such as potentially money laundering. (*Id*.)

### 2.4 The Statements at Issue

The Complaint is premised on a handful of statements, primarily made by John Mulvehill, over the course of 3 videos with a total run time of 89 minutes and 33 seconds published on December 19, 2020 (the "First Video"), December 31, 2020 (the "Third Video"), and February 19, 2021 (the "Second Video").[10]

#### 2.4.1 The First and Second Videos

The First and Second Videos consist of Cornelia interviewing Mulvehill regarding the latter's claims about Plaintiffs. They were recorded around the same time, but were released two months apart. (Cornelia Trans. at 81:1-24). The First Video begins with a statement from Cornelia in which he discloses to viewers that Mulvehill "had all the sources. And every claim in this video is from information given to John from anonymous sources. For our defense, **make sure to do your own research, and everything is just allegations at this point**." (**Exhibit 23** at WEALTHY000059) (emphasis added).

The first category of statements is that Buczkowski lied about his educational credentials and that he attended an online class at the University of Chicago Business School instead of earning a degree from there. (ECF No. 1 at ¶ 59). All statements in this category were made exclusively by Mulvehill. (*Id*.) Defendants were initially suspicious of some of Mulvehill's claims in other contexts, but trusted friends of Cornelia vouched for Mulvehill's credibility, and so there was nothing that made Cornelia doubt this claim, particularly given how minor it was compared to the

---

[10] A transcript of the First Video, produced as WEALTHY000058-89, is attached as **Exhibit 23**. A transcript of the Second Video, produced as WEALTHY000116-172, is attached as **Exhibit 24**. A transcript of the Third Video, produced as WEALTHY000448-461, is attached as **Exhibit 25**. Copies of the videos themselves have also been produced as COR000002, 3, and 1, respectively.

RANDAZZA | LEGAL GROUP

other information Mulvehill provided about Plaintiffs. (Cornelia Trans. at 7:16-10:3, 45:6-10; 74:2-75:6, 79:16-80:9, 86:3-20). Cornelia had already heard many of Mulvehill's claims stated in the First and Second Video in videos that Mulvehill had published previously, and the fact they were still available on YouTube and there had been no legal action taken against them made Mulvehill appear more credible to Cornelia. (*Id*. at 75:3-76:4, 79:16-80:9, 86:21-87:12).

The second category of statements is a brief exchange in which Mr. Mulvehill speculates that one of Buczkowski's companies, Larson Consulting, "very well could be a front for laundering money" because it "has like no you know substance behind it online." (ECF No. 1 at ¶ 63). Cornelia's only statement on this subject is "[y]eah the address is right down the street from my house here too in Vegas" before Mulvehill makes his money laundering comment. (*Id*.)

The third category of statements has Cornelia stating "[t]hat's shady yeah so the next on my notes is the drug house. So you believe, well I guess with public record. He must have been running a drug operation, if it's a house tied to him, it was a house purchased using drug money. Is there any reason to believe that it was him running a drug operation. Do you think that's how he made his money." (ECF No. 1 at ¶ 66). He also states, in response to Mulvehill claiming that Buczkowski has a lengthy arrest record,[11] "it's public record too like it's known it's public." (*Id*.)

The fourth category of statements consists of Mulvehill recounting an incident where he was arrested in 2013 in Las Vegas and accusing Buczkowski of setting him up for this arrest. (ECF No. 1 at ¶ 70). In his account, he includes specific details, such as Buczkowski telling Mulvehill to keep his presence in Vegas a secret, that he was using an alias, that he was using a burner phone, and that he implausibly claimed not to know one of the girls they met during Buczkowski's visit despite her "working like a block from where he lives in Chicago, and then that girl ended up dead." (*Id*.) Cornelia did not make any of these claims about Buczkowski. Because he found Mulvehill credible, and because Mulvehill was an eye witness to events where public records and

---

[11] Buczkowski does indeed have an arrest record from 2008 in Peoria, Illinois. (*See* <arrestfacts.com> arrest record for Buczkowski, produced as COR000468-471, attached as **Exhibit 26**).

other sources of information would be difficult, if not impossible, to obtain, Cornelia believed these statements to be true. (Cornelia Trans. at 81:17-83:8, 86:21-87:12; Cornelia Decl. at ¶ 17).

The fifth category of statements consists of Mulvehill stating that the primary witness in Mulvehill's criminal case, the same girl Buczkowski implausibly claimed he did not know, died at age 28 and he could not find her cause of death, and that this "was the link to [Buczkowski]." (ECF No. 1 at ¶ 72). Cornelia did not make this claim, instead only stating in a comment to the Second Video that he "looked up the women [sic] in Clark County records and she definitely passed. Tried to find the cause of death but they required a lawyer's consent in order to attain to those documents." (*Id*.) No one claimed or implied that Buczkowski killed this woman; they simply noted that the set of disclosed facts was odd. Based on the information Mulvehill provided and the research Cornelia conducted, it seemed plausible Buczkowski *knew something* about the woman's death. (Cornelia Trans. at 78:5-79:11; Cornelia Decl. at ¶ 16).

The final category of statements, as characterized by Plaintiffs, are "assertions that Mr. Buczkowski (1) engaged in illegal activity in helping his clients obtain credit; (2) did not author any of his own content; and (3) coerced his clients to provide testimonials." (ECF No. 1 at ¶ 78).[12]

In the First Video, Mulvehill discusses how his sources regarding Plaintiffs informed him that Plaintiffs were "getting guys to get these loans and these credit cards that can be given out to, like, anyone, even with bad credit" and that Buczkowski:

---

[12] It is unclear whether Plaintiffs actually assert that this category of statements is actionable. In response to an Interrogatory asking for all facts supporting Plaintiffs' assertion that the statements complained of in the Complaint were false, Plaintiffs made no mention of this category. (*See* Plaintiffs' responses to First Set of Interrogatories, attached as **Exhibit 27**, at Answer No. 4). In response to requests for admission concerning this category, Plaintiffs objected on the ground that they were "not relevant, or related in any way, to actionable statements identified by Plaintiffs in the Complaint." (*See* **Exhibit 15** at Response Nos. 19-26). Furthermore, Plaintiffs' counsel did not ask Cornelia a single question about these statements during his deposition, and Buczkowski made no reference to them during his. Because of this, there is also a real question as to whether Plaintiff Wealthy is even a proper party, since none of the statements that Plaintiffs have addressed throughout this case have anything to do with Wealthy. These statements are clearly identified as being allegedly false and defamatory in the operative Complaint, however, and so Defendants will respond to them.

FER-050

trained his sales team on how to get guys basically predatory … loans. Okay? Like, so what's happening when they run into guys that can't afford the 5K mentorship on the phone, okay, that came in through ads and these other … deceptive things where he's making himself out to be the man … But they're – they're getting guys to get these loans and these credit cards that can be given out to, like, anyone, even with bad credit … what he's saying is that tongs of guys that couldn't afford it are getting signed up for credit cards and loans that they – that they know for a fact they can't repay, okay, which is illegal. Okay? They're not doing the lending themselves, but they're putting them in contat. They're coercing them heavily, which is illegal, to take out loans and credit cards that they cannot afford. They know for a fact they can't afford, with massive interest rates and penalties and all this stuff, which – so these – and it's ruining guys' lives. They're getting them to max the credit cards too.

So when they get this card, they say, Okay, now perfect, you have a 10K line. You can get into these two mentorships. Or if they get approved for more, okay, we can get you into these three mentorships. Look, now – now your life is going to be for the better. You're going to make all that money back in no time. No, they're not. Okay? Now their life is ruined.

And he gave me examples, and I've gotten emails of all kinds of examples of guys literally having mental breakdowns. Okay? Literally lives being destroyed.

(**Exhibit 23** at WEALTHY000069-70). During the course of discovery, Plaintiffs produced email correspondence with a customer who complained that he wanted a refund because he spent $13,500 of his mother's money "on the programs and bootcamps you never delivered on" and that Plaintiffs allowed him to continue purchasing their courses despite knowing he did not have a job and couldn't afford them. (*See* customer complaint emails, produced as WEALTHY000442-447, attached as **Exhibit 28**).

In the First Video, Mulvehill states that Buczkowski "forces guys halfway through the … mentorship course, to give a testimonial. Okay? It's, like, non-negotiable. He says, like, If you want to continue the course, you have to give me a testimonial … and they … lead them into saying different things and they … edit the stuff. So that's how he's putting out all these false reviews. Okay?" (**Exhibit 23** at WEALTHY000065-66).

In the First Video, Mr. Mulvehill states that Buczkowski's real estate mentorship program is "being written by a 19-year-old Romanian kid who literally in the screenshots is, like, Hey, I know nothing about real estate. I'm going to start doing some research. So what he's having these

guys do, what composes his business mentorship stuff … he's having, like, 19- and 20-year-old kids, who are working for free, doing research to try to just find like – that's why the content's all recycled. It's just stuff they found on the internet and in books." (**Exhibit 23** at WEALTHY000061-62). He then goes on to say that "the main goal when they write in their content is that they want to upsell everything. Okay? So he's telling them, You need to create problems for these guys that the other courses are going to solve." (*Id*. at WEALTHY000063).

The above statements make up a relatively small portion of the First and Second Videos. The videos primarily consist of Mulvehill discussing how Buczkowski and his various services are ineffective and that he makes false promises in the hope of having customers purchase increasingly expensive services. (*See, generally*, **Exhibits 23** and **24**). The Complaint does not assert these statements or any of their implications are false or otherwise actionable.

Prior to publishing the First Video, Mulvehill sent Cornelia an email from a third party who stated that he knew people who took a "Bootcamp" provided by Plaintiffs and relayed their account of events as well as his experience with Plaintiffs, including (1) a person who spent his inheritance from his grandmother on Plaintiffs' services for no benefit; (2) a person who spent over $20,000 on Plaintiffs' bootcamps and had a mental breakdown after a weekend of the course; (3) a person who spent his entire savings on a bootcamp and had a mental breakdown after it; and (4) the source mentioning that he received no valuable information because he didn't purchase the most expensive ticket and that Buczkowski tried to seduce the girlfriend of an attendee during one of Buczkowski's conferences. (*See* text message exchange between Mulvehill and Cornelia, produced as COR000004-43, attached as **Exhibit 29**, at COR000011-12).

Mulvehill told Cornelia, prior to the First Video being published, that he talked to a 21 year-old who claimed to have written "100% of the business mentorship" program that Plaintiffs offer "and half of the stocks one," and that a Romanian 19 year-old wrote the other half of the stocks program "and [the] entire real estate one" with instructions to overwhelm and confuse their audience. (**Exhibit 29** at COR000016-24). He told Cornelia that he had sources who informed him that Buczkowski does essentially nothing during his coaching courses and merely allows sales

FER-052

RANDAZZA | LEGAL GROUP

associates to up-sell more expensive products to customers during them. (*Id*.) He shared with Cornelia a December 9, 2020 email from a third party who attended an RSD Derek bootcamp in 2018 and called the bootcamp "right on a full scam" (*Id*. at COR000033), and an email in which a third party said he lost around $35,000 "on Derek and his dumb products. I really got tricked and sucked into their false expectations and sales tricks." (*Id*. at COR000034). He told Cornelia that he heard from his sources that the content taught in Plaintiffs' courses was plagiarized. (*Id*. at COR000037). He told Cornelia that Buczkowski made false representations to customers to increase the price for services he offered. (*Id*. at COR000039).

In comments in response to the First Video, several third parties shared their accounts of their experience with Plaintiffs, including that Buczkowski's courses and instructional material are manipulative, harmful, ineffective, and a scam, and otherwise corroborating many of the claims in the First Video and the information Mulvehill provided to Cornelia. (*See* YouTube comments to First Video, produced as COR000044-77, attached as **Exhibit 30**).

Finally, prior to publishing the First Video, Cornelia watched a video of an interview Mulvehill conducted with a prior employee or contractor of Plaintiffs who corroborated the claims about Plaintiffs' unethical business practices and using young, unqualified people to write the instructional and promotional material for Plaintiffs' courses.[13] (*See* transcript of Mulvehill interview with "Rohit," produced as COR000275-293, attached as **Exhibit 31**).[14] Cornelia found the interviewee and his statements to be credible. (Cornelia Trans. at 81:1-83:8).

Based on the information provided by Mulvehill and third parties, as well as his own experience in researching and analyzing various forms of self-professed gurus who turned out to be scammers, Cornelia believed that Mulvehill's statements that Buczkowski engage in high-pressure sales tactics to encourage customers to obtain credit they could not afford for his courses,

---

[13] An example of this promotional material, which promises the moon to those who purchase Plaintiffs' courses, is found at **Exhibit 31**, produced as WEALTHY000394-439).

[14] The video of the interview was produced as COR000151.

RANDAZZA | LEGAL GROUP

that Buczkowski did not author his own content, and that he coerced his clients to provide testimonials were true. (Cornelia Trans. at 81:1-83:8; Cornelia Decl. at ¶ 19).

### 2.4.2   The Third Video

The Third Video is a live broadcast of Cornelia's "2020 Charlatan of the Year Awards," an obviously satirical presentation with live commentary from users in which Mr. Cornelia "nominates" individuals for various "award" categories such as "best use of scam or fraudulent money" and the "silencing criticism award." (**Exhibit 25** at WEALTHY000449, 451). The only mention of Buczkowski is when Cornelia states "It's Dan Bilzerian here but here's the contender recently, Derrick [sic] Moneyberg. Derrick [sic] Moneyberg as number seven nominee for Charlatan of the Year. Derek Moneyberg, this one's tough … I'm thinking Dan Bilzerian is an absolute contender, but I'm thinking Derek Moneyberg. Derek Moneyberg fits all of the checkboxes for scammer of the year, Charlatan of the year." (*Id*. at WEALTHY000460). Based on the information Mr. Cornelia had at the time the Third Video was published, as well as his own experience in exposing scammers, he felt it was reasonable and accurate to call Buczkowski a scammer and a charlatan. (Cornelia Decl. at ¶ 19).

## 3.0   LEGAL STANDARD

When brought in federal court, a special motion to dismiss under NRS 41.660 is a motion for summary judgment under Fed. R. Civ. P. 56, though with a few extra hurdles Defendants must satisfy to be entitled to the statute's substantive immunity and right to fee-shifting. First, the defendant must show, by a preponderance of the evidence, that the plaintiff's claim is "based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). One of the specific statutory categories of protected speech is "[c]ommunication[s] made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood." NRS 41.637(4).

Federal courts treat Anti-SLAPP motions based on extrinsic evidence as a motion for summary judgment. *See Planned Parenthood Fed'n of Am. v. Ctr. For Med. Progress*, 890 F.3d

RANDAZZA | LEGAL GROUP

828, 833-34 (9th Cir. 2018) (California statute); *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*, No. 2:14-CV-424 JCM (NJK), 2016 U.S. Dist. LEXIS 101028, at *6 (D. Nev. Aug. 2, 2016) (Nevada statute). Because of this, the second prong analysis here simply becomes the standard analysis for a motion for summary judgment under Fed. R. Civ. P. 56. The Court is well aware of the summary judgment standard. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Nevada courts look to case law applying California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, which shares many similarities with Nevada's law. *Coker v. Sassone*, 432 P.3d 746, 749 n.3 (Nev. 2019).

## 4.0   ARGUMENT

### 4.1   Plaintiffs' Lanham Act Claim Fails as a Matter of Law

The Lanham Act prohibits any person from misrepresenting her or another person's goods or services in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).[15] The Ninth Circuit has adopted the following definition of "advertising or promotion": (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff,[16] (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public. *Coastal Abstract Serv., Inc. v. First Am. Title Ins.*

---

[15]   While the first cause of action refers to violation of 15 U.S.C. § 1125 *et seq.*, the only statutory provision allegedly violated is § 1125(a)(1)(B). (ECF No. 1 at ¶ 120). This cause of action is thus solely for false advertising, as Section 43(a) of the Lanham Act "is not a boundless remedy for unfair trade practices in all their multivariate forms, or 'a federal codification of the overall law of unfair competition,' but only to the trade practices that it specifically prohibits." *Maffick LLC v. Facebook, Inc.*, No. 20-cv-05222-JD, 2021 U.S. Dist. LEXIS 89930, *7 (N.D. Cal. May 11, 2021) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003)).

[16]   This element of an unfair competition claim was likely abrogated by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The Ninth Circuit has not officially done so, but it has recently expressed skepticism that commercial competition is necessary for this claim. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1120 (9th Cir. 2021). This Motion thus will not address the commercial competition element.

*Co.*, 173 F.3d 725, 735 (9th Cir. 1999).[17] The Lanham Act is concerned only with commercial speech, and so, to have standing to bring a claim under the Act, "the Plaintiff's injuries must fall within the 'zone of interests' the statute was intended to protect." *Lexmark*, 572 U.S. at 130. "'The mere fact that the parties may compete in the *marketplace of ideas* is not sufficient to invoke the Lanham Act.'" *Children's Health Def. v. Facebook Inc.*, 2021 U.S. Dist. LEXIS 121314, *54 (N.D. Cal. June 29, 2021) (quoting *Farah v. Esquire Mag.*, 736 F.3d 528, 541 (D.C. Cir. 2013)). None of these elements have been satisfied.

### 4.1.1   The Complained-of Statements are Not Commercial Speech

Commercial speech is "usually defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409, 121 S. Ct. 2334, 150 L. Ed. 2d 438 (2001). Where there is a "close question" as to commercial speech, "'strong support' that the speech should be characterized as commercial speech is found where [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." *Hunt v. City of L.A.*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Young Drugs Prods. Corp.*, 463 U.S. 60, 66-67 (1983)). The Court in *Bolger* found that the confluence of all three of these factors showed that pamphlets primarily promoting prophylactics were commercial speech, though it left open the possibility that speech could be commercial even if one of the elements was not present. 463 U.S. at 67 n.14. However, the presence of only a single factor is not sufficient to make speech commercial. *Id*. at 66-67 (noting that "the fact that Youngs has an economic motivation for mailing the pamphlets would clearly be insufficient by itself to turn the materials into commercial speech").

---

[17]   A plaintiff must also show a "false or misleading description of fact, or false or misleading representation of fact." For the reasons explained in Section 4.3.2, *infra*, the statements at issue are expressions of opinion that are not actionable under the Lanham Act. *See Ariix*, 985 F.3d at 1121 (noting that, in Lanham Act claim, "[s]tatements of opinion and puffery, however, are not actionable").

RANDAZZA | LEGAL GROUP

### 4.1.1.1    The Complained-of Statements Were Not "Advertisements"

The First and Second Videos are concerned primarily with exposing Plaintiffs as scammers who use high-pressure sales tactics to trick customers into purchasing overpriced coaching courses consisting of plagiarized material that do not deliver on any of their promises. The Third Video merely states in humorous fashion that Buczkowski is likely a scammer. In that sense, this case is remarkably similar to *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017). There, the operator of a science-based medicine blog was sued under the Lanham Act for publishing articles about a doctor who made dubious claims about the efficacy of a medical procedure. In finding that the articles were not advertisements, the Eleventh Circuit noted that "the first articles makes no mention of Dr. Novella's practice or medical services." *Id*. at 951. Similarly here, none of Defendants' videos make any reference to their services.

Another comparable case is *Corsi v. Infowars LLC*, No. A-20-CV-298-LY, 2021 U.S. Dist. LEXIS 98486 (W.D. Tex. May 24, 2021) (report and recommendations adopted in 2021 U.S. Dist. LEXIS 208688 (June 25, 2021)). There, radio show host Alex Jones and his branded companies were sued under the Lanham Act for statements uttered primarily by Roger Stone, who appeared on Jones's program but was not affiliated with Jones or his companies, criticizing the plaintiffs with insults and expressions of opinion. The court found that the statements were not "commercial speech or advertising, but rather expressions of opinions as commentary during a radio show. The complained of conduct at issue does not fall within the zone of interest that the Lanham Act was intended to protect." *Id*. at *10.

Just as in *Infowars*, the statements at issue are criticisms of Buczkowski on a personal level and expressions of opinion about Plaintiffs' conduct. There is not a single mention of Defendants' goods or services. If Plaintiffs are now taking the position that the statements identified in ¶¶ 76-79 are not actionable, then they truly do not have a leg to stand on, as the remaining statements are criticisms of Buczkowski alone and do not relate to Plaintiffs' goods or services in any way.

#### 4.1.1.2 The Complained-of Statements Do Not Refer to a Particular Product of Defendants

Just as the statements at issue are not advertisements, they do not refer to any of Defendants' products or services. Mulvehill refers to his own products at a few points in the First and Second Videos,[18] but Defendants make no reference to them and Plaintiff neither alleges (nor could he show) that they are agents of one another. Plaintiffs also do not identify how any such references are actionable.

#### 4.1.1.3 Defendants Did Not Have an Economic Motivation

The third *Bolger* factor is concerned with whether the speaker acted *primarily* out of economic motivation; the mere presence of *any* motivation is not sufficient. *Procter & Gamble Co. v. Amway*, 242 F.3d 539, 552-53 (5th Cir. 2001), *abrogated on other grounds by Lexmark*, 572 U.S. 118 (stating that "[t]he question whether an economic motive existed is more than a question whether there was an economic incentive for the speaker to make the speech; the *Bolger* test also requires that the speaker acted *substantially* out of economic motivation"). The kind of profit motive endemic to every commercial enterprise does not, without more, make something commercial speech. *See Novella*, 848 F.3d at 952 (finding that "[e]ven if Dr. Novella receives some profit for his quasi-journalistic endeavors as a scientific skeptic, the articles themselves, which never propose a commercial transaction, are not commercial speech simply because extraneous advertisements and links for membership may generate revenue"); *see also Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) (holding that "Speech … is protected … even though it may involve a solicitation to purchase or otherwise pay or contribute money"). Without this limitation, any publication sold in commerce would constitute commercial speech. *See, e.g., Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 960 (9th Cir. 2012) (finding that the financial benefit obtained from publishing yellow pages directories could not characterize the publication as commercial); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1541 (S.D.N.Y. 1994) (holding that "[t]he fact that AIP and APS

---

[18]  Accordingly, the Lanham Act claims against Mulvehill in the identical action, Case No. 2:22-cv-00740-JCM-EJY, may be valid. But, they certainly are not valid as to Defendants.

stood to benefit from publishing Barschall's results—even that they *intended* to benefit—is insufficient by itself to turn the articles into commercial speech").

The only products or services other than Plaintiffs' mentioned in any of the videos are Mulvehill's.[19] Defendants do not have any kind of financial relationship with Mulvehill. They do not obtain any commissions from him and do not receive any form of compensation for sales of any of Mr. Mulvehill's goods or services. (Cornelia Decl. at ¶ 22). Plaintiffs do not allege that such a relationship exists, either, instead merely identifying advertisements for Defendants' products and services found on Defendants' YouTube channel but not mentioned in any of the videos. This is exactly the kind of incidental economic benefit that cannot constitute commercial speech. *See Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1099 (N.D. Cal. 2021) (concerning defendant's sale of licenses for database of pharmaceutical products, finding lack of commercial speech, noting absence of allegations of "any 'hidden financial arrangement' … 'beyond simply benefiting from sales of the publication' itself" and that "Plaintiff has not identified what direct or indirect benefit Defendant may receive for changing the manner in which it codes Plaintiff's products, aside from selling licenses to its database"). Courts in the Ninth Circuit have declined to accept Plaintiffs' argument because "any speech could be commercial if eventually relied on by third-party actors who conduct business." *Exeltis United States, Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1234 (N.D. Cal. 2021).

### 4.1.2 The Complained-of Statements Were Not Made to Influence Consumers to Purchase Defendants' Goods or Services

None of the statements in the videos were made to entice consumers to purchase Defendants' services. These services are mentioned nowhere in the videos. The Complaint does not even contain this allegation, and thus the Lanham Act claim fails. *See Alfasigma*, 398 F. Supp. 3d at 591 (finding allegation that defendant influencing decisions of consumers on whether to purchase the plaintiff's goods, rather than the defendant's goods, did not satisfy third element of

---

[19] Again, Mulvehill has been sued under this theory, which may have merit as to him. But that analysis does not apply to Defendants.

unfair competition/false advertising claim under Lanham Act). The Lanham Act is only concerned with "commercial transactions in which a person tries to profit by unfairly trading on the good will another has built up in her goods or services, or by mischaracterizing goods and services to divert sales *to himself*." *Maffick LLC*, 2021 U.S. Dist. LEXIS 89930 at *7-8 (citing *Bosely Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (emphasis added)).

### 4.1.3     The Complained-of Statements Were Not Sufficiently Disseminated to the Relevant Purchasing Public

The last element of a Section 1125(a) claim is whether the publication was sufficiently disseminated to the relevant purchasing public. *Coastal Abstract Serv. v. First Am. Title Ins. Co*, 173 F.3d 725, 735 (9th Cir. 1999). "To be 'sufficiently disseminated,' the actions must be 'part of an organized campaign to penetrate the relevant market,' which typically involves 'widespread dissemination within the relevant industry.'" *Ariix*, 985 F.3d at 1121 (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)); *see Newcal Indus., Inc. v. Ikon Office Sol*., 513 F.3d 1038, 1054 (9th Cir. 2008) (concluding that allegedly false statements were sufficiently disseminated because they were made in promotional literature distributed to thousands of sales accounts).

Defendants merely published the videos on their YouTube account. There is no evidence that Defendants engaged in an advertising campaign (advertising what is unclear since their services are mentioned nowhere in the videos) to ensure widespread market penetration. There is no evidence that any significant portion of Plaintiffs' potential audience actually viewed or was likely to view these videos. There is simply publication on a single internet website. This is not adequate to show sufficient dissemination to the relevant purchasing public.

None of the elements for a claim under 15 U.S.C. § 1125(a)(1)(B) are met, and thus Plaintiffs' Lanham Act claim fails. The Lanham Act claim is so obviously defective and exceptionally weak, in fact, that Defendants should be entitled to recover their attorneys' fees under 15 U.S.C. § 1117(a).

**4.2     Defendants' Speech is Protected Under the Anti-SLAPP Statute**

An Anti-SLAPP movant does not carry a heavy burden in satisfying the first prong of an Anti-SLAPP motion. He does not need to "establish [that his] actions are constitutionally protected under the First Amendment as a matter of law." *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 305 (2001). Nevada cases in the past few years have made it clear that the prong one showing is not meant to be difficult to make. *See Stark v. Lackey*, 458 P.3d 342 (Nev. 2020) (finding that defendant's declaration attesting that she believed her statements were true or were statements of opinion was sufficient to show good faith under prong one).

**4.2.1     Defendants' Speech - Directly Connected to an Issue of Public Interest**

"Issue of public interest" is defined broadly as "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). "The issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id*. "Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persona, and entities, especially when a large, powerful organization may impact the lives of many individuals." *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 650 (1996) (emphasis added). An activity does not need to "meet the lofty standard of pertaining to the heart of self-government" to qualify for Anti-SLAPP protection; "social or even low-brow topics may suffice." *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2009).

The lifestyles and conduct of well-known public figures and even celebrities constitute an issue of public interest. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2011) (celebrity Paris Hilton acknowledging that her "privileged lifestyle and her catchphrase ('that's hot') are matters of widespread public interest"). "[T]here is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 667-68 (1st Dist. 2010). Issues that involve even private conduct by public figures may be of public interest. *See Sipple v. Foundation For Nat. Progress*, 71 Cal. App. 4th 226, 238 (2d Dist. 1999)

(finding that lawsuit based on reported allegations against nationally prominent media strategist for political figures, accusing him of physically and verbally abusing his wife, involved a matter of public interest). And recently, the California Supreme Court found that picketing a local land developer, even when arguably animated by a personal grievance and attended by only a few dozen people, satisfies the first prong when outside observers would view their speech as relating to the broader issues of inadequate housing and foreclosures. *Geiser v. Kuhns*, No. S262032, 2022 Cal. LEXIS 5120, *22-23, 26-31 (Cal. Aug. 29, 2022).

The Nevada Supreme Court has also adopted the five "guiding principles" laid out in *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. 2013). *Shapiro v. Welt*, 133 Nev. 35, 39 (2017). These principles are:

(1) "public interest" does not equate with mere curiosity;
(2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
(3) there should be some degree of closeness between the challenged statements and the asserted public interest – the assertion of a broad and amorphous public interest is not sufficient;
(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Id*. at 968. These "guiding principles" are not a formulation of new law, but rather a distillation of California and U.S. Supreme Court decisions on what constitutes an issue of public interest. *See Piping Rock*, 946 F. Supp. 2d at 968. Nothing in *Welt* suggests that Nevada courts use this as an exclusive checklist. Instead, the cases cited above and in the Anti-SLAPP Motion also guide the public issue analysis and the application of the *Piping Rock* factors.

Plaintiffs are public figures. They have aggressively marketed their services and have actively sought media attention, boasting of their dozens of interviews with prominent national and international media outlets. (*See* **Exhibits 1, 3-5, and 7**). They have a millions-strong social media following. (*See* ECF No. 1 at ¶¶ 20-21; **Exhibits 1 and 4**). There were also stories and accusations leveled at Buczkowski for shady and unethical business practices, his credibility, and

his educational credentials before any of the videos at issue were published. (*See* **Exhibits 9-12**). There was thus an existing controversy on all these issues by December 2020.

The statements in the Videos primarily concern Plaintiffs' credibility as a businessman, potential ethical and legal problems with the services they provide, and the quality of the services they provide. These statements are unquestionably of significant interest to the millions of people who follow Plaintiffs on social media as well as all people to whom they advertise their services. Not everyone in America may have heard of Plaintiffs, but a sufficiently large international community has, and this community has a significant interest in hearing about how Plaintiffs are scamming their customers. They are not part of any private dispute between Defendants and Plaintiffs, as no such dispute existed. The statements are protected.

### 4.2.2   Defendants' Speech was Published in a Public Forum

Defendants published the statements at issue on the video streaming platform YouTube. Publicly accessible web sites are public forums for Anti-SLAPP purposes. *See Cole v. Patricia A. Meyer & Associates*, 206 Cal. App. 4th 1095, 1121 (2012). There is no dispute that the statements at issue were made in a place open to the public or a public forum.

### 4.2.3   Defendants' Speech was Made in Good Faith

For a statement to be made in "good faith," it must be either true or made without actual knowledge of falsity. NRS 41.637. "In determining whether the communications were made in good faith, the court must consider the 'gist or sting' of the communications as a whole, rather than parsing individual words in the communications." *Rosen v. Tarkanian*, 453 P.3d 1200, 1222 (Nev. 2019); *see Abrams v. Sanson*, 458 P.3d 1062, 1068-69 (Nev. 2020) (same). Statements of opinion can never be made with knowledge of falsity for purposes of the prong one analysis. *Sanson*, 458 P.3d at 1068 (Nev. 2020) (finding that "[b]ecause 'there is no such thing as a false idea,' statements of opinion are statements made without knowledge of their falsehood under Nevada's anti-SLAPP statutes").

The Nevada Supreme Court recently clarified this standard in *Williams v. Lazer*, 459 P.3d 93 (Nev. 2021). That case dealt with a woman who purchased a condo and made statements about

RANDAZZA | LEGAL GROUP

the real estate agent on the other side of the transaction, calling him racist, sexist, unprofessional, and unethical, and providing specific examples of conduct that she claimed supported these statements. After determining that allegations of the plaintiff being racist, sexist, unethical, and unprofessional were statements of opinion that could not be made with knowing falsity, the Court found that "[w]hile Lazer provided several declarations that allege some of Williams's statements are factually wrong, such declarations do not constitute contrary evidence to refute Williams's affidavit because they do not allege, much less show, that *Williams knew* any of the statements were false when she made them." *Id*. at 98 (emphasis in original).

Cornelia did not know or believe any statement in any of the videos at issue, whether uttered by him or Mulvehill, was false. (Cornelia Decl. at ¶ 20). Rather, he reviewed significant evidence provided by Mulvehill regarding Plaintiffs and their business practices, in addition to his own research concerning Mulvehill's claims, and found Mulvehill and his sources to be credible. (Cornelia Trans. at 7:16-10:3, 45:6-10, 74:2-80:9, 81:1-85:4, 86:3-87:12; Cornelia Decl. at ¶ 20). Was Mulvehill lying to further a personal vendetta? Perhaps he was. But, Cornelia had no knowledge of that fact at the time, and had no reason to doubt Mulvehill at the time. Cornelia published the videos in good faith.

### 4.3 Plaintiffs' Defamation Claim Fails as a Matter of Law

To establish a cause of action for defamation, a plaintiff must allege: (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *See Wynn v. Smith*, 117 Nev. 6, 10 (Nev. 2001); *see also Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 718 (2002).

#### 4.3.1 Defendants are Not Even Potentially Liable for the Majority of the Statements

Defendants did not utter the vast majority of allegedly defamatory statements. Mulvehill did. Plaintiffs do not allege that Defendants uttered these statements themselves or adopted them as their own in some subsequent publication. Rather, they try to impute liability for Mulvehill's

FER-064

statements onto Defendants because Mr. Cornelia was interviewing Mulvehill. This does not establish liability for Defendants. An interviewer is not liable for the statements made by an interviewee. The interviewee's statements are his own responsibility.

The plaintiffs in *Infowars* made the same argument, to no success, only there they made some attempt to allege an agency relationship between the defendants and the party who actually uttered the allegedly actionable statements, along with them acting "in concert" with one another. *See* 2021 U.S. Dist. LEXIS 98486 at *12-15. The court there found such allegations conclusory and thus insufficient on a motion to dismiss. *Id*. Here, there are not even threadbare allegations of a legally significant relationship between Mulvehill and defendants that would make Defendants liable for his statements. Accordingly, Defendants cannot be liable for essentially any of the statements in the First and Second Videos.

### 4.3.2   The Statements are Not Capable of Being Defamatory

A statement must include a false assertion of fact to be defamatory. "[M]inor inaccuracies do not amount to falsity unless the inaccuracies 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Pegasus*, 118 Nev. at 715 n.17. If the "gist" or "sting" of a story is true, it is not defamatory even if some details are incorrect. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).

A statement of opinion cannot be defamatory, as the First Amendment recognizes that there is no such thing as a "false" idea. *See Pegasus,* 118 Nev. at 714; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). In Nevada, "a statement is not defamatory if it is an exaggeration or generalization that could be interpreted by a reasonable person as 'mere rhetorical hyperbole.'" *Pegasus*, 118 Nev. at 715; *see also Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002) (finding that references to tabloid articles as "trash," "crap," and "garbage" were not actionable); *and see Phantom Touring v. Affiliated Publ'ns*, 953 F.2d 724, 728, 730-31 (1st Cir. 1992) (finding that theatre review calling a production "a rip-off, a fraud, a scandal, a snake-oil job" was "obviously protected hyperbole" or incapable of being proven false).

The context of a statement is important in determining whether it is actionable. *See Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1339 (2009) (finding that "the fact that a statement '[s]tanding alone' could be construed as false is not sufficient to support a defamation claim"); *see also Lewis v. Time, Inc.*, 710 F.2d 549, 553 (9th Cir. 1983) (stating "even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made [under] circumstances in which 'an audience may anticipate efforts by the parties to persuade others to their position by use of epithets, fiery rhetoric or hyperbole'") (quoting *Information Control Group v. Genesis One Computer*, 611 F.2d 781, 784 (9th Cir. 1980)). If a publication containing an allegedly defamatory statement is surrounded by "loose, figurative, or hyperbolic language," then any allegedly defamatory meaning may be negated by the publication's overall tenor. *See Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 689 (1994).

### 4.3.2.1     Statements Regarding Alleged Money Laundering

The allegation by Mr. Mulvehill that Larson Consulting was a money laundering front is not an assertion of fact. Mr. Mulvehill stated that the business "has like no substance behind it online." (ECF No. 1 at ¶ 63). This is an accurate assessment of that company's presence, as its social media profiles have not been updated in years, it has not had an active website since 2019, and it is not even located at the address it provided to the Nevada Secretary of State. (**Exhibits 17-21**). Mulvehill then concluded, based on this disclosed fact, that it "very well … could be a front for laundering money." (ECF No. 1 at ¶ 63). Plaintiffs can disagree with the reasonableness of Mulvehill's conclusion, but it is an opinion based on true disclosed facts. A statement of opinion "'based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.'" *Lewis v. Time, Inc.*, 710 F.2d 549, 555 (9th Cir. 1983) (quoting Restatement (Second) Torts § 566 cmt. c (1977)). These statements cannot be defamatory.

#### 4.3.2.2 Statements Regarding Buczkowski's Involvement in an Illegal Drug Operation

Just as with the statements regarding Larson Consulting, these statements are protected opinion based on true disclosed facts. Cornelia looked at the civil asset forfeiture case in which Buczkowski was involved and the related criminal case against Timothy Lantz. From these documents, he saw that Buczkowski allegedly was friends with Lantz and that his father was allegedly involved in the marijuana grow operation, and that his personal items were found at the seized properties that were part of the operation. (**Exhibits 14 and 16**). He mentioned in the Second Video that this was a matter of public record. (ECF No. 1 at ¶ 66).

Plaintiffs do not, and cannot, dispute the procedural posture of the civil forfeiture case and that the allegations in those complaints are matters of public record. Again, Plaintiffs may contend that it was not reasonable for Cornelia to conclude from this information that Buczkowski was involved in a drug operation, but that does not make his statements factual.

#### 4.3.2.3 Statements Regarding Plaintiffs' Business Practices

The statements allegedly accusing Plaintiffs of using illegal means in helping clients obtain credit, not authoring their own content, and coercing clients to provide testimonials are either statements of opinion or factual statements without any rebuttal. Defendants did not make any of these claims, instead at most opining that the representations Mulvehill was making were consistent with the conduct of other scammers. Plaintiffs will likely argue that Mulvehill's sources provided false information, but at this point Plaintiffs are foreclosed from making such an argument. They explicitly stated that the accuracy of such statements is irrelevant to their claims, provided no information regarding these allegations, and asked no questions regarding them during depositions. (**Exhibits 15** at Response Nos. 19-26 and **Exhibit 27** at Answer No. 4). Having refused to provide such information and disclaiming its relevance, they cannot now present it. These statements are not actionable.

#### 4.3.2.4 Cornelia Nominating Buczkwoski for the "Charlatan of the Year" Award

Nominating someone for a "charlatan of the year" award in an obviously light-hearted video is a classic expression of opinion, and is no different from calling someone a snake-oil salesman or a crook. *See Phantom Touring*, 953 F.2d at 730-31; *see also Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 280, 105 Cal. Rptr. 2d 674 (2001); *and see Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 361-62 (D. Mass. 2017) (finding that calling someone a "fraud" or a "charlatan" in blog post was mere use of colorful and figurative language, rather than "any fact-based accusation that plaintiff has actually committed a fraud"). This statement is not actionable.

#### 4.3.3 Plaintiffs are Public Figures and Must Satisfy the Actual Malice Standard

Plaintiffs' defamation claim also fails due to a lack of actual malice. A limited purpose public figure "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz*, 418 U.S. at 351; *see also Pegasus*, 118 Nev. at 720. This is a question of law, and a court's determination is based "on whether the person's role in a matter of public concern is voluntary and prominent." *Bongiovi v. Sullivan*, 122 Nev. 556, 572 (2006).

As discussed in Sections 2.1, and 4.2.1, *supra*, Plaintiffs are public figures by virtue of their aggressive advertising and promotion of their services that were the primary subject of the videos at issue, their international media coverage, and the online discussions regarding their business ethics and efficacy of their services prior to any of the videos being published.[20] They cannot seriously claim that, with a millions-strong international following, they are not at least limited-purpose public figures in the context of whether they are fraudsters and scammers.

As public figures, Plaintiffs must prove that they can overcome the actual malice standard with clear and convincing evidence. *See Bose Corp. v. Consumers Union*, 466 U.S. 485, 511

---

[20] There is no merit to any claim that they are "involuntary" public figures. Plaintiffs purchase placements in major magazines for the purpose of purchasing fame. They not only are in the public spotlight, but beg for that spotlight. They do so so often that Buczkowski claims to be unable to remember how many times they bought publicity. (Buczkowski Trans. at 95:14-100:4).

(1984); *Underwager v. Channel 9 Australia*, 69 F.3d 361, 365 (9th Cir. 1995). If they cannot do so, the Court must grant the Anti-SLAPP motion. *See Makaeff v. Trump Univ., LLC*, 26 F. Supp. 3d 1002, 1014 (S.D. Cal. 2014) (granting Anti-SLAPP motion based on lack of evidence of actual malice). It is a question of law whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice. *See Underwager*, 69 F.3d at 365.

Actual malice may be found only when a statement is made with knowledge of falsity or with reckless disregard for the truth. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). As explained in Section 4.2.3, *supra*, Defendants did not publish any statements with knowledge of falsity. This leaves only reckless disregard, which requires that a publisher "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Bose Corp.*, 466 U.S. at 511 n.30. Reckless disregard only exists when the defendant "acted with a 'high degree of awareness of … [the] probable falsity' of the statement or had serious doubts as to the publication's truth." *Pegasus*, 118 Nev. at 719. The question is not "whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Reader's Digest Assn. v. Superior Court*, 690 P.2d 610, 617-18 (Cal. 1984); *see also Thompson*, 390 U.S. at 731. Moreover, "[a] publisher does not have to investigate personally, but may rely on the investigation and conclusions of reputable sources." *Reader's Digest*, 690 P.2d at 619.

### 4.3.4   Defendants Did Not Publish with Actual Malice

Plaintiffs cannot provide any evidence that Defendants had actual malice as to any statement at issue. First, regarding the statements about Plaintiffs' unethical and possibly illegal business practices, Cornelia was relying on Mulvehill and his sources. Mulvehill shared statements from several of these sources with Cornelia prior to publication of the First video, and Cornelia even watched a lengthy interview with a first-hand witness who corroborated these claims. (Cornelia Trans. at 81:1-83:8; Cornelia Decl. at ¶ 8 and 9). Cornelia found all these sources credible. (*Id*. at ¶ 10). The behavior reported by Mulvehill and these sources was consistent with

RANDAZZA | LEGAL GROUP

patterns of behavior engaged in by other scammers that Cornelia had observed and reported on. (*Id*. at ¶ 10). He was not in possession of any information contradicting these claims when he published. (*Id*. at ¶ 17). Plaintiffs have chosen not to provide any evidence regarding the falsity of these statements, and it is impossible for Defendants to have published any of these statements with actual malice. For the same reasons, Plaintiffs cannot possibly show that Defendants nominated Buczkowski for a "charlatan of the year" award with actual malice. They have not contested the factual underpinnings of these statements, and not even the Complaint alleges that the vast majority of the statements in the First and Second Videos, which provided the basis for the award nomination, are actionable.

As for the statements regarding Larson Consulting as a front for money laundering, the factual bases for this opinion are already laid out in Sections 2.2 and 4.3.2.1, *supra*. Defendants never called it a front for money laundering, but there was reason to believe this was a possibility based on its non-existent online presence and connection to Buczkowski, who had a long history of obscuring his face and identity. (Cornelia Trans. at 83:15-85:4; Cornelia Decl. at ¶ 13).

Similarly, Sections 2.3 and 4.3.2.2, *supra*, discuss Mr. Cornelia's factual bases for stating that Buczkowski was likely involved in an illegal marijuana grow operation, namely the allegations in the civil asset forfeiture case. Cornelia reasonably believed these allegations were accurate, and there was never a statement from law enforcement clearing Buczkowski of any wrongdoing in relation to these cases. (Cornelia Trans. at 76:5-78:4; Cornelia Decl. at ¶ 14).

Mulvehill's statement that Buczkowski was lying about his education credentials appears to be false. However, this is an incredibly minor, off-handed comment that Cornelia barely thought about given the other statements that were the subjects of the First and Second Videos. (Cornelia Trans. at 86:3-20). And Buczkowski admitted that he attended an unconventional program at the University of Chicago business school in which he attended classes on his own schedule. (Buczkowski Trans. at 12:24-13:13). Given that Mulvehill appeared credible to Cornelia regarding every other statement, including by providing documentary support for statements about Plaintiffs'

shady business practices, there was no reason for Cornelia to doubt the accuracy of this statement. (Cornelia Trans. at 86:3-87:12).

Finally, we have Mulvehill's statements regarding Buczkowski setting him up to be arrested in 2013 and allegedly being involved in the death of a 28 year-old woman around this time. Mulvehill's statements are about an encounter he had with Buczkowski himself, who was trying to be very secretive and instructed Mulvehill not to tell anyone of his whereabouts. Under such circumstances, there is little to no research Cornelia could have performed to verify Mulvehill's claims, not that he was obligated to perform any investigation at all. Cornelia, who had already found that Mulvehill's other claims about Buczkowski were backed up by documentary evidence and corroborating sources, found Mulvehill credible and decided to trust him regarding these statements. (Cornelia Trans. at 7:16-10:3, 45:6-10, 74:2-76:4, 79:16-80:9, 86:21-87:12; Cornelia Decl. at ¶ 20). That trust does not constitute actual malice.

### 4.4    The Intentional Infliction of Emotional Distress Claim Fails

To establish a cause of action for intentional infliction of emotional distress, a plaintiff must affirmatively prove: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Olivero v. Lowe*, 116 Nev. 395, 398-99 (2000) (citing *Star v. Rabello*, 97 Nev. 125, 126 (1981)) (citations omitted). "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4 (1998). The bar for establishing extreme and outrageous conduct is high. *See Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121-22 (D. Nev. 2009). Harm is only recognized for this tort if "the stress [is] so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Because he is a public figure, Plaintiff must also prove that the statements are false and were made with actual malice. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988).

Under *Falwell*, Buczkowski's IIED claim fails for the same reasons his defamation claim fails. Buczkowski also cannot show any extreme or outrageous conduct. Merely allowing another person to make well-supported accusations and express negative opinions about a person is not extreme and outrageous conduct, especially concerning a public figure. None of the statements at issue come even close to meeting this standard.

Even if Mulvehill's statements were extreme and outrageous, however, Buczkowski cannot show he suffered severe emotional distress. Plaintiffs have not disclosed any evidence, such as therapist bills, of Buczkowski's alleged emotional distress. Defendants asked for such evidence in discovery, and Plaintiffs only provided alleged evidence of economic or reputational harm, not emotional distress. (*See* **Exhibit 27** at Answer No. 6). The Complaint does not even contain anything more detailed than a conclusory allegation of "severe or extreme emotional distress." (ECF No. 1 at ¶¶ 131-132). The IIED claim fails.

### 4.5     Plaintiffs' Business Disparagement Claim Fails as a Matter of Law

A defamation action concerns statements that injure a plaintiff's personal reputation, while a business disparagement claim concerns statements regarding the quality of the plaintiff's goods or services. *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 385-86 (2009). A business disparagement claim requires falsity and a lack of privilege, in addition to a higher malice requirement that incorporates the actual malice standard and proof of special damages. *See id*. at 386. The business disparagement claim is completely duplicative of Plaintiffs' defamation claim, and thus Plaintiffs must prove actual malice under *Falwell*. The business disparagement claim fails for the same reasons the defamation claim fails.

### 5.0     CONCLUSION

For the foregoing reasons, the Court should grant this Motion and dismiss all of Plaintiffs' claims with prejudice. The Court should also grant Defendants' their costs and reasonable attorneys' fees, in addition to $10,000, under NRS 41.670 regarding Plaintiffs' state-law claims, and award their reasonable attorneys' fees under 15 U.S.C. § 1117(a) regarding the Lanham Act claim.

Dated: September 30, 2022.       Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, NV Bar No. 12265
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

Attorneys for Defendants
Spencer Cornelia, Cornelia Media LLC,
and Cornelia Education LLC

Case No. 2:21-cv-01173-JCM-EJY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 30, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Marc J. Randazza
Randazza Legal Group, PLLC

- 32 -
Anti-SLAPP Motion and Motion for Summary Judgment
2:21-cv-01173-JCM-EJY

FER-074

# EXHIBIT F

# Excerpts from "House Hack Expert" e-book

# EXHIBIT F

FER-075



# *How to Live for Free*

# By: Spencer Cornelia

FER-076

39

# Let's Make Money!

If you'd like to cut down the learning curve and start living for free ASAP, then I'd recommend joining my monthly membership for access to a Private Discord Community, Monthly Coaching Calls, and Access to having all of your questions answered.  You can join here (VIP House Hack Expert Patron): https://www.patreon.com/spencercornelia

If you are not interested in joining the membership groups and would like to donate, then you can send money to any of the following:

Donation Amounts: $5 / $25 / $50 / $100 / $250 / $500

Venmo: @Spencer-Cornelia
Cash App: $SpencerCornelia
Paypal: spencer0cornelia@gmail.com
Coinbase (Ethereum): 0x8443c1af59E77a956E43727a75D54EBFc1BF99B3
Coinbase (Bitcoin): 3QphERCVz9Wm5qW4vtag1Y1S911ZezdVQD

FER-077

TAMARA BEATTY PETERSON, ESQ., Bar No. 5218
tpeterson@petersonbaker.com
NIKKI L. BAKER, ESQ., Bar No. 6562
nbaker@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone:  702.786.1001
Facsimile:  702.786.1002

JEFF B. VOCKRODT, ESQ. (will comply with LR IA 11-2 within 45 days)
jvockrodt@cm.law
DAVID JACOBY, ESQ. (will comply with LR IA 11-2 within 45 days)
djacoby@cm.law
CULHANE MEADOWS PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

*Attorneys for Plaintiffs Wealthy Inc. and
Dale Buczkowski*

**PETERSON BAKER, PLLC**
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WEALTHY INC. and DALE BUCZKOWSKI,<br><br>       Plaintiffs,<br>v.<br><br>SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC,<br><br>       Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiffs Wealthy Inc. ("Wealthy") and Dale Buczkowski (collectively, "Plaintiffs"), by and through their undersigned counsel, Culhane Meadows PLLC and Peterson Baker, PLLC, hereby file this complaint against Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC ("Defendants"), and in support thereof aver as follows:

**JURISDICTION AND VENUE**

1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1367 (supplemental jurisdiction) and under the Lanham Act, 15 U.S.C. § 1121(a) and 1125(a)(1)(B).

- "Authentic or Charlatan: Derek Moneyberg |RSD Derek", uploaded December 19, 2020, available at – https://youtu.be/47X1P03F-ls – (approximately 30.2K views as of June 7, 2021) ("First Video"); and

- "Derek Moneyberg - Fake Guru?", uploaded February 19, 2021, available at – https://youtu.be/hg44-wFMaQg – (approximately 15.2K views as of June 7, 2021) ("Second Video").

56.    The First and Second Videos involve Mr. Cornelia ("[SC]") interviewing Mr. Mulvehill, a.k.a. John Anthony ("[JA]").

57.    The First and Second Videos include false and defamatory statements which are neither matters of opinion nor based on disputed anonymous accounts of potential witnesses, but are unqualified and provably false statements of fact. These statements which were published by Defendants in the First and Second Videos are among the subjects of this lawsuit.

58.    These false and defamatory statements include at least the following factual assertions that Mr. Buczkowski: (1) lied about his educational achievement; (2) laundered money; (3) manufactured and/or sold illegal drugs; (4) framed Mr. Mulvehill for his 2013 arrest in Las Vegas, leading to four felony and four misdemeanor charges; and (5) was involved in the death of the woman who was the alleged victim in the arrest of Mr. Mulvehill.

59.    The First and Second Videos include the following assertions that Mr. Buczkowski lied about his educational achievement:

- "[JA:] I'm Derek Moneyberg, I have this University of Chicago degree OK which is not even true . . . " (First Video at 1:57–2:02).

- "[JA:] Yeah, he also like even his credentials, like someone said in one of the YouTube comments they provided proof that like that he never went to, like, you know, he never attended Chicago Business School, he did like some kind of online thing." (Second Video at 9:34–9:46).

- "[JA:] He just repackaged content, and then made it out, he made himself out to be some kind of genius because he studied business but he doesn't have a real .

8

FER-079

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

22, 2020 Facebook Post on the Derek Moneyberg® page advertising One-on-One consulting calls, where the commenter stated: "For anyone who's looking to be a victim of Dale Buczkowski (aka Derek Moneyberg), please watch this first - https://youtube/watch?v=47X1P03F-ls." A copy of this comment is annexed as Exhibit K.

104.    Since the Defendants' publication of the false and defamatory videos, Plaintiffs have received reports from their clients and potential clients that they have been contacted on Instagram by accounts with zero posts or followers that repeat the false and defamatory assertions published by Defendants. A copy of a comment by such an account named "dale_buczkowski" is annexed as Exhibit L.

105.    On information and belief, images widely published by Defendants as the thumbnail and main images for the First, Second, and Third Videos have been used by at least one account on Twitter entitled "Derek Moneyberg Hate Account" at the "@moneyberg_hate" Twitter address, which was created on April 2021. A copy of the Derek Moneyberg Hate Account showing this image is annexed as Exhibit N. A copy of the thumbnail images used in the First, Second, and Third Videos is annexed as Exhibit O.

106.    In addition to monetary harm, the false and defamatory statements in Defendants' videos have caused Mr. Buczkowski severe emotional distress.

107.    Mr. Buczkowski grew up in difficult circumstances. He has spent much of his adult life distancing himself from the criminal environment of his childhood, where both his father and his uncle were convicted and incarcerated for drug-related crimes.

108.    A large part of improving his life and distancing himself from his childhood environment involved achieving great academic success, including earning an MBA from the prestigious Chicago Booth School of Business and an undergraduate degree from Bradley University with academic honors.

109.    The Defendants' and Mr. Mulvehill's false and defamatory statements about Mr. Buczkowski's level of educational achievement and involvement with illegal activities brought back terrible emotional and childhood trauma for Mr. Buczkowski.

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

18

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

110. Aside from losing clients as a result of the defendants' false statements alleged in this Complaint, Mr. Buczkowski has endured significant mental anguish, including anxiety, tension, lost sleep and overeating as a result of Defendants' and Mr. Mulvehill's false and defamatory statements.

## CLAIMS FOR RELIEF

## AS AND FOR A FIRST CLAIM

### UNFAIR COMPETITION AND FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125 *et seq.*

111. Plaintiffs incorporate the preceding paragraphs as though set forth at length.

112. The statements published by Defendants and set forth above were false, misleading, and defamatory.

113. Defendants' publication of false, misleading, and defamatory statements regarding Mr. Buczkowski, the Derek Moneyberg® brand and Wealthy's products and services, and of other false and misleading statements praising the products, programs, and plans with which Defendants are affiliated and/or receive compensation from, constitutes unfair competition and/or false advertising.

114. Defendants' social media channels purport to be an independent review that provides viewers with an objective resource, but actually are conduits for the promotion of products, programs, and plans with which Defendants are affiliated and/or from which they receive compensation.

115. Plaintiffs and Defendants compete directly with each other in the entrepreneurship, finance, business, and/or real-estate self-improvement niches.

116. In promoting those other products, programs, and plans, and disparaging Mr. Buczkowski, the Derek Moneyberg® brand and Wealthy's products and services, Defendants are making false and misleading statements about Wealthy's products and services, including but not limited to the statements alleged herein.

19

FER-081