**No. 23-3227**
Cross Appeal Case No. 23-3390
No. 24-159

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

WEALTHY, INC. and DALE BUCZKOWSKI,
*Plaintiffs- Appellants,*
v.
SPENCER CORNELIA, CORNELIA MEDIA LLC, and
CORNELIA EDUCATION LLC,
*Defendants- Appellees,*
and
JOHN MULVEHILL; et al.,
*Defendants.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:21-cv-01173-JCM-EJY, consolidated with
No. 2:22-cv-00740-JCM-EJY
Honorable James C. Mahan, United States District Judge

**APPELLANTS' MOTION TO STAY MANDATE PENDING
PETITION FOR CERTIORARI**

TAMARA BEATTY PETERSON
tpeterson@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: 702.786.1001

JEFFREY VOCKRODT
jvockrodt@cm.law
CM LAW
13101 Preston Road
Suite 110-1510
Dallas, TX 75240
Telephone: 202.615.9886

*Attorneys for Appellants Wealthy Inc. and Dale Buczkowski*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 3

    I.      INTRODUCTION ..................................................... 5

    II.     BACKGROUND ........................................................ 6

    III.    LEGAL STANDARD ................................................. 8

    IV.    REASONS TO STAY THE MANDATE .................................... 9

        A.   Appellant's Petition Will Present Substantial Questions of Law ................................................................ 9

             1)   A Well-Recognized Circuit Split Exists Over Whether State Anti-SLAPP Provisions Apply in Federal Court ...... 9

             2)   This Case Presents An Ideal Vehicle For the Supreme Court to Address This Question ....................... 21

        B.   There Is Good Cause for a Stay ............................... 23

    V.     CONCLUSION ...................................................... 24

Certificate of Compliance ................................................... 25

CERTIFICATE OF SERVICE ............................................... 26

# TABLE OF AUTHORITIES

**CASES**

*Abbas v. Foreign Pol'y Grp.*, LLC, 783 F.3d 1328 (D.C. Cir. 2015).................................................................... 12, 15, 16, 17

*Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014) ....................................13

*Berisha v. Lawson*, 141 S. Ct. 2424 (2021) ...........................................20

*Berk v. Choy,* 607 U.S. ___, No. 24-440 (January 20, 2026) .......17, 18, 19

*Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989)........................ 9

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) ...............................................................................12

*Carr v. Saul*, 593 U.S. 83 (2021)...........................................................22

*Center for Competitive Politics v. Harris*, Case No. 14-15978 (9th Cir. May 11, 2015) .............................................................. 9

*Clifford v. Trump*, 141 S.Ct. 1374, 209 L. Ed.2d 120 (2021) .................21

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949).............................................12, 17, 18

*Coker v. Sassone*, 432 P.3d 746 (Nev. 2019) .....................................6, 22

*Epic Games, Inc. v. Apple, Inc.,* Case Nos. 21-16506 & 21-16695 (9th Cir. July 17, 2023)............................................................. 9

*Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) ....................................13

*Gopher Media LLC v. Melone*, Case No. 24-2626 (9th Cir. Oct. 27, 2025)...............................................................................9, 14, 17

*Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009)..............................................................................13

*Klocke v. Watson,* 936 F.3d 240 (5th Cir. 2019)....................................13

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020)...................................12, 14

*Sarver v. Chartier*, 813 F.3d 891(9th Cir. 2016)...............................15, 18

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,* 559 U.S. 393 (2010)...................................................15, 16

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999)......................................................11, 18

*United States v. Pete*, 525 F.3d 844 (9th Cir. 2008)................................ 9

## STATUTES

Nevada Revised Statute § 41.660 ...................................................passim

Nevada Revised Statute § 41.670 ...................................................passim

## RULES

Federal Rule of Appellate Procedure 41(d)(1) .....................................5, 8

Federal Rule of Civil Procedure 12...................................... 11, 13, 17, 18

Federal Rule of Civil Procedure 56................................................passim

Federal Rule of Civil Procedure 8.................................................11, 17

Supreme Court Rule 13 ......................................................... 6

## I.  INTRODUCTION

Plaintiffs-Appellants Wealthy, Inc. and Dale Buczkowski ("Plaintiffs") respectfully move this Court pursuant to Federal Rule of Appellate Procedure 41(d)(1) to stay issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari in the Supreme Court of the United States. This Court's Order and Memorandum Disposition filed February 25, 2026 ("Order") replaced the prior memorandum disposition issued by the panel and ***reversed*** the district court's denial of the Cornelia Defendants' Special Motion to Dismiss Pursuant to Nevada Revised Statute § 41.660, ***remanding*** for the imposition of mandatory attorney's fees and other relief available under NRS § 41.670. The broader legal question undergirding that decision — whether a special motion to dismiss provided under state anti-SLAPP legislation that alters the circumstances under which a court must dismiss a plaintiff's claim before trial may be brought in federal court — remains deeply contested and warrants definitive resolution by the Supreme Court.

The application of state anti-SLAPP provisions in federal court sits at the intersection of the *Erie* doctrine and the Federal Rules of Civil

Procedure, and it has produced a sharp and well-recognized circuit split. The Ninth Circuit has long held that state anti-SLAPP statutes — including Nevada's, which is modeled on and "share[s] a near-identical structure" with California's, *Coker v. Sassone*, 432 P.3d 746, 749 (Nev. 2019) — may be invoked in federal court. The Ninth Circuit is the only U.S. Courts of Appeals holding that state anti-SLAPP special motions to dismiss that alter the burden of proof are applicable in federal court. The Second, Fifth, Eleventh, and D.C. Circuits disagree.

Plaintiffs intend to file a petition for certiorari within the time prescribed by Supreme Court Rule 13. Because the petition will present substantial and recurring questions of federal law on which the Circuits are divided, and because good cause exists to preserve the status quo pending review, a stay of the mandate is warranted.

## II.   BACKGROUND

Plaintiffs brought claims for defamation, intentional infliction of emotional distress, business disparagement, and Lanham Act violations against Spencer Cornelia, Cornelia Media, LLC, and Cornelia Education, LLC (the "Cornelia Defendants") in the United States District Court for the District of Nevada. The claims arose from a series of videos published

by the Cornelia Defendants criticizing Plaintiffs. After the close of discovery, the Cornelia Defendants filed a Special Motion to Dismiss Pursuant to Nevada's anti-SLAPP statute, NRS § 41.660, which the district court denied.

On appeal, this Court affirmed summary judgment for the Cornelia Defendants, finding that Plaintiffs are limited-purpose public figures who had not made the requisite clear and convincing showing of actual malice. The Court further reversed the denial of the Cornelia Defendants' anti-SLAPP motion, holding that the Cornelia Defendants satisfied both prongs of Nevada's anti-SLAPP framework: they demonstrated good faith communication on an issue of public concern, and the second prong "collapsed" into the summary judgment standard under Fed. R. Civ. P. 56, thereby reversing the district court's denial of the anti-SLAPP motion. This Court noted that reversal of the anti-SLAPP denial was not mooted by summary judgment because a successful movant under Nevada anti-SLAPP has "the right to mandatory fee shifting, additional discretionary awards, and filing of a separate action for compensatory and punitive damages". Order (Dkt. 83.1), at 7 n.1 (citing Nev. Rev. Stat. §41.670(1)(a)–(b)).

Plaintiffs now seek a stay of the mandate so that they may petition the Supreme Court to address whether state anti-SLAPP special motions that alter the burden of proof should apply in federal court at all. The legal framework applied by this Court rests on a foundation that is the subject of a mature and irreconcilable circuit split, and Plaintiffs have a strong interest in obtaining a definitive, nationwide rule on the question. Good cause exists to stay the mandate to maintain the status quo pending Supreme Court review.

Plaintiffs contacted counsel for the Cornelia Defendants / Appellees regarding the relief sought in this Motion. Counsel for Appellees oppose this motion.

## III. LEGAL STANDARD

Federal Rule of Appellate Procedure 41(d) permits the Court to stay the issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari upon the applicant's showing "that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). The Court frequently stays the mandate pending petition for certiorari, since parties "need not demonstrate that exceptional circumstances justify a stay." *United States*

*v. Pete*, 525 F.3d 844, 851 & n.9 (9th Cir. 2008) (quoting *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528–29 (9th Cir. 1989)); *see also Gopher Media LLC v. Melone*, Case No. 24-2626 (9th Cir. Oct. 27, 2025) (Order Granting Stay of Mandate) (Dkt. 95.1); *Epic Games, Inc. v. Apple, Inc.,* Case Nos. 21-16506 & 21-16695 (9th Cir. July 17, 2023) (Order Granting Stay of Mandate) (Dkt. 250); *Center for Competitive Politics v. Harris*, Case No. 14-15978 (9th Cir. May 11, 2015) (Order Granting Stay of Mandate) (Dkt. 38).

## IV.   REASONS TO STAY THE MANDATE

### A.   Appellant's Petition Will Present Substantial Questions of Law

#### 1)   *A Well-Recognized Circuit Split Exists Over Whether State Anti-SLAPP Provisions Apply in Federal Court*

Following California's lead, thirty-eight states have enacted anti-SLAPP laws, of which thirty of these laws contain a special motion to dismiss that alters the burden of proof for the non-moving party. *See* Anti-SLAPP statutes: 2025 Report Card, Institute for Free Speech ("IFS Report") (available at https://www.ifs.org/anti-slapp-report/) (last visited March 2, 2026). The IFS Report provides a table near the end showing

the 30 states scoring 12 out of 12 on "Burden of Proof on Plaintiff to Defeat an anti-SLAPP Motion." *Id.* These states include California, Nevada, Texas, Georgia, and Maine, among others. Many of these stronger anti-SLAPP jurisdictions are recent additions such as Maine, which increased its grade "from a 'C-' to an 'A+' after enacting the Uniform Public Expression Protection Act that is modeled after UPEPA." *Id.*

The "special" motion to dismiss is a procedural mechanism that is designed to allow early dismissal of meritless defamation claims. One common feature among the states' anti-SLAPP laws that contain such "special" motion is a two-prong burden shifting mechanism. Once a defendant makes a threshold showing that the lawsuit arises from the defendant's exercise of his right to free speech under the first prong, then the burden shifts to the plaintiff to establish "a probability of prevailing on the claim" under the second prong. *See* Nev. Rev. Stat. §41.660(3)(b). The "special" motion to dismiss provisions also typically include several features designed to achieve quick resolution of the lawsuit, and award attorney fees to a successful movant. *See* Nev. Rev. Stat. §41.660(2) ("A special motion to dismiss must be filed within 60 days after service of the

10

complaint, which period may be extended by the court for good cause shown"); Nev. Rev. Stat.§41.670(4) ("If the court denies the special motion to dismiss filed pursuant to NRS 41.660, an interlocutory appeal lies to the Supreme Court"); Nev. Rev. Stat.§41.670(1)(a) ("The court shall award reasonable costs and attorney's fees to the person against whom the action was brought . . .").

This Court, several years after the enactment of California's anti-SLAPP legislation, held in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, that "the twin purposes of the *Erie* rule – 'discouragement of forum-shopping and avoidance of inequitable administration of the law' - favor application of California's Anti-SLAPP statute in federal cases." 190 F.3d 963, 973 (9th Cir. 1999). The Court observed that "[a]lthough Rules 12 and 56 allow a litigant to test the opponent's claims before trial, California's 'special motion to strike' adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by an entitlement to fees and costs." *Id.* Recognizing there is a commonality of purpose of the FRCP and special motions to dismiss in "the expeditious weeding out of meritless claims before trial," the court rejected the argument that FRCP 8, 12, and 56 "were intended

11

to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *Id.* at 972–73. (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 556, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949)).

The circuit courts are sharply divided on whether a state anti-SLAPP special motion to dismiss providing an altered burden of proof for the non-moving party may be brought in federal court. The Second, Fifth, Eleventh, and D.C. Circuits that have considered the question have uniformly found these motions are inapplicable in federal court. *La Liberte v. Reid*, 966 F.3d 79, 87-88 (2d Cir. 2020) (holding California's anti-SLAPP special motion cannot be brought in federal court); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1347 (11th Cir. 2018) (holding Georgia's anti-SLAPP special motion requiring the plaintiff demonstrate "a probability" that he "will prevail on the claim" to avoid dismissal cannot be brought in federal court); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (holding District of Columbia's anti-SLAPP special motion to dismiss inapplicable in federal court).

The Fifth Circuit originally upheld the applicability of Louisiana's anti-SLAPP special motion to dismiss with a heightened burden of proof in federal court in *Henry v. Lake Charles American Press, L.L.C.*, 566

F.3d 164, 169, 182 (5th Cir. 2009); however, the court later distinguished *Henry* in *Klocke v. Watson.* There, the Fifth Circuit noted that its decision in *Henry* did not discuss the conflict between Louisiana's anti-SLAPP provision and the Federal Rules, and then held that Texas' anti-SLAPP statute's requirement that the plaintiff demonstrate with "clear and specific evidence" that he can meet each element of his claim to avoid dismissal was displaced by Fed. Rule Civ. Pro. 12 and 56, and thus could not be brought in federal court. *Klocke v. Watson*, 936 F.3d 240, 248-249 (5th Cir. 2019). The Court also distinguished cases in the First and Second Circuit dealing with anti-SLAPP statutes which did not "set[] up an additional hurdle a plaintiff must jump over to get to trial." *Id.* at 245 (citing *Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010) (upholding applicability in federal court of Maine's original anti-SLAPP statute) and *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (approving use of Nevada Pre-2015 anti-SLAPP law in federal court that did not include burden shifting)). Whether the First Circuit would approve Maine's modified anti-SLAPP statute in federal court is not yet known. The Second Circuit, however, would likely decline to apply Nevada's current anti-SLAPP special motion to dismiss for the reasons it declined to apply

13

California's anti-SLAPP statute in *La Liberte*, 966 F.3d 79, as noted above.

This circuit split was acknowledged in a recent concurrence by Judge Bress, joined by Judges Collins, Lee and Bumatay in *Gopher Media LLC v. Melone*, 154 F.4th 696, 709 (9th Cir. 2025) (en banc) (J. Bress, concurring). The *Gopher Media* court overruled its earlier precedent finding interlocutory orders appealable and dismissed the appeal on the grounds that an interlocutory appeal (which was expressly allowed under the California anti-SLAPP law) did not satisfy the collateral order rule. The court thus held that there is no right to an interlocutory appeal of a denied anti-SLAPP motion in federal court. The concurring judges would have dismissed the appeal on the broader ground that California's anti-SLAPP statute is inapplicable in federal court. *Id.* at 721 ("We should have held that California's anti-SLAPP statute does not apply in federal court").

As Judge Bress' concurrence observed, the *Gopher Media* ruling that interlocutory appeals allowed under the California anti-SLAPP provisions do not apply in federal court is just the latest in a series of decisions "steadily holding that critical features of California's anti-

14

SLAPP statute do not govern in federal court." *Id.* at 711–712. One such feature whose consequences are illuminated by the present case is Nevada's requirement that "[a] special motion to dismiss must be filed within 60 days after service of the complaint, which period may be extended by the court for good cause shown." Nev. Rev. Stat. §41.660(2). In this case, Appellee's special motion to dismiss was filed after discovery had closed, along with other dispositive motions under Rule 56, a date that was well after 60-days from service of the complaint. However, the Ninth Circuit had previously held that such time periods found in anti-SLAPP statutes are inapplicable in federal court because they "directly collide with the more permissive timeline Rule 56 provides for the filing of a motion for summary judgment." *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).

The Supreme Court will likely be interested in resolving this circuit split. Sitting on the D.C. Circuit, then-Judge Kavanaugh considered whether D.C.'s anti-SLAPP provision should apply in federal court under *Shady Grove. See Abbas*, 783 F.3d at 1334 (quoting *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,* 559 U.S. 393, 398-99 (2010) (majority opinion)). Under *Shady Grove*, the state law should

not apply in federal court if "(1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Id*. The Court observed in *Abbas* that the D.C. anti-SLAPP statute "conflict[s] with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial." 783 F.3d at 1334. Specifically, "unlike the D.C. Anti-SLAPP Act, the Federal Rules do not require a plaintiff to show a likelihood of success on the merits in order to avoid pre-trial dismissal." *Id*. This same conflict is present in every state anti-SLAPP statute that alters the burden of proof on a special motion to dismiss.

Responding to arguments that "the D.C. Anti-SLAPP Act's special motion to dismiss provision [is] functionally identical to Federal Rule 56's summary judgment test" and therefore avoids preemption, Judge Kavanaugh reasoned that "[t]he main problem with the defendants' theory is that it requires the Court to re-write the special motion to dismiss provision." *Id*. at 1334–1335. This very same criticism can be made of the Ninth Circuit's approach where the second prong under the Nevada anti-SLAPP framework was deemed to have "collapsed" into the summary judgment standard under Fed. R. Civ. P. 56. As noted by Judge

16

Bress, the Ninth Circuit in *Newsham* "did not grapple with how the anti-SLAPP statute's 'probability' standard deviates from the Rule 12(b)(6) and Rule 56 standards." *See Gopher Media*, 154 F.4th at 711 (J. Bress, concurring). Since *Abbas* was decided in 2016, the circuit split over this issue has only deepened with the Second, Fifth, and Eleventh Circuits following the D.C. Circuit's rationale in *Abbas* and holding that anti-SLAPP special motions to dismiss that provide an additional hurdle for a plaintiff to reach trial cannot be brought in federal court.

In January 2026, a nearly unanimous Supreme Court in *Berk v. Choy* further undermined the Ninth Circuit's rationale for reconciling the various state anti-SLAPP provisions with the Federal Rules, 607 U.S. ___, No. 24-440 (January 20, 2026). The Court held that a Delaware law requiring a medical malpractice plaintiff to provide an "affidavit of merit" that "accompanie[s]" the plaintiff's complaint was displaced by Fed. Rule Civ. Proc. 8(a)(2), which requires only "a short and plain statement of the claim showing that [he] is entitled to relief." *Id.,* slip op. at 8. The Supreme Court rejected the defendant's argument that its earlier ruling in *Cohen v. Beneficial Industrial Loan Corp* meant that the Delaware rule could co-exist with the Federal Rules. The Court noted that "Cohen

17

… did not identify and exempt a broad category of so-called preconditions to proceeding from conflict with the Federal Rules … [i]t held that a particular state law addressed a matter that was unaddressed by the relevant Federal Rule." *Id.* slip op. at 7–8. The Court explained that in the case at hand "the state law and the Federal Rule address the same issue: the information that a plaintiff must provide about the merits of his claim at the outset of litigation." *Id.,* slip op. at 8. This clarification is crucial because the Ninth Circuit in *Newsham* relied on a similar misreading of *Cohen* in reaching its conclusion that the anti-SLAPP provisions are not displaced by Federal Rules 12 and 56. *Newsham*, 190 F.3d at 972–73.

The Ninth Circuit's handling of the 60-day time limit found in many anti-SLAPP statutes is also unlikely to pass muster after *Berk*. In *Sarver*, the Ninth Circuit dispensed with "the timing controls imposed by section 425.16(f) [of California's anti-SLAPP statute]" because they "directly collide with the more permissive timeline Rule 56 provides for the filing of a motion for summary judgment." 813 F.3d at 900 (citing Fed. R. Civ. P. 56(b) (permitting parties to file a motion for summary judgment "at any time until 30 days after the close of all discovery"). The state and

18

federal provisions here are designed to answer the same question: when must a dispositive motion be filed? The Ninth Circuit's approach in such situation of "declin[ing] to apply the statute's 60-day time frame in federal court, and [] refer[ring] instead to our own rules of procedure", *id.* at 901, is improper under *Berk* since both provisions were designed to answer the same question. *See Berk*, slip op. at 8.

Additionally, the *Berk* Court rejected efforts to reconcile the conflict with the FRCP by re-writing the Delaware law, noting that "[a]fter defendants' edits, the Delaware law is no longer a pleading requirement that serves a gatekeeping function; it is a free-floating evidentiary requirement that can serve as the basis for an early dismissal." *Id.,* slip op. at 8. As noted above, the Ninth Circuit's approach of deciding whether to grant or deny a special motion to dismiss using the standards of Federal Rules 12 and 56 simply re-writes the state anti-SLAPP special motions to remove the probability of success standard. This fundamentally alters the nature of the motion passed by state legislatures from one that requires a plaintiff to establish a prima facie case to one that simply requires a triable issue of fact. Additionally, the removal of the 60-day timing control from the special motion to dismiss

19

allows it to be brought after the close of discovery. Because of the fee-shifting under the anti-SLAPP procedures, this rewriting of the statute may significantly alter what attorney fees are recoverable in a way that the state legislature never contemplated.

Lastly, the anti-SLAPP motion here — as often occurs in the anti-SLAPP context — being predicated upon the finding of no showing of actual malice by a private individual plaintiff, further illustrates the concerns raised by Justic Gorsuch in his dissent from the denial of certiorari in *Berisha v. Lawson*, 141 S. Ct. 2424 (2021) (J. Gorsuch, dissenting). Justice Gorsuch noted that changes in technology and the media landscape in recent years have led to a state where "publishing *without* investigation, fact-checking, or editing has become the optimal legal strategy." *Id.* at 2428 (emphasis in original). In addition, "[n]ot only has the doctrine evolved into a subsidy for published falsehoods on a scale no one could have foreseen, it has come to leave far more people without redress than anyone could have predicted." *Id.* at 2429. Because the anti-SLAPP laws go to the core of whether a particular individual may have redress for published falsehoods, the need to resolve the current circuit split over how the most aggressive anti-SLAPP laws are applied in

20

federal court is acute. This is precisely the type of entrenched, widely acknowledged circuit split that justifies a stay of the mandate pending certiorari review.

### 2) This Case Presents An Ideal Vehicle For the Supreme Court to Address This Question

The Supreme Court has thus far declined to resolve this split, but the certiorari petitions to date were poor vehicles for Supreme Court resolution of this issue. In *Clifford v. Trump*, 141 S.Ct. 1374, 209 L. Ed.2d 120 (2021) the case presented an unusual posture of the Ninth Circuit applying Texas law in upholding Texas's anti-SLAPP law in federal court. *See Clifford v. Trump*, 818 Fed. Appx. 746 (9th Cir. 2020). Those cases where a petitioner was seeking to overturn a decision denying anti-SLAPP special motions are often not clean vehicles for review due to the possibility of alternative grounds for affirmance. In contrast, the present case presents a straight-forward challenge to the broad applicability of anti-SLAPP special motions that alter the burden of proof in federal court.

This case is a strong vehicle for Supreme Court review for several additional reasons. First, this Court applied Nevada's anti-SLAPP statute — Nev. Rev. Stat. §41.660, which the Nevada legislature modeled

21

on California's, *see Coker v. Sassone*, 432 P.3d 746 (Nev. 2019) — and reversed the district court's denial of the Cornelia Defendants' motion, making the applicability of the statute in federal court a necessary predicate of the decision. Second, the issue is preserved. Since settled Ninth Circuit law on the applicability of anti-SLAPP special motions in federal court would have made arguments to overturn such law in this circuit futile, Appellant cannot be deemed to have waived the present challenge. *See Carr v. Saul*, 593 U.S. 83 (2021) (citations omitted) ("It makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested. Such a vain exercise will rarely 'protec[t] administrative agency authority' or 'promot[e] judicial efficiency.'") Third, while this Court also affirmed summary judgment on independent grounds, the anti-SLAPP ruling carries distinct and significant consequences — namely, mandatory fee shifting and the right to pursue a separate damages action under Nev. Rev. Stat.§41.670, as this Court has stated — that are not available through summary judgment alone, ensuring the anti-SLAPP question remains independently justiciable. Fourth, the question presented is a pure question of law that does not depend on the facts of any particular case,

22

making it suitable for the kind of definitive, broadly applicable ruling that the Supreme Court favors. Finally, the question has significant practical importance: anti-SLAPP statutes are now in force in thirty-eight states and the District of Columbia, and federal courts across the country routinely confront questions about their applicability. The absence of a uniform federal rule imposes substantial costs on litigants, who cannot predict whether anti-SLAPP provisions will be available depending upon which circuit they happen to be in.

## B.    There Is Good Cause for a Stay

Good cause supports a stay of the mandate pending disposition of the petition for certiorari. The questions presented are substantial, recurring, and the subject of a deeply entrenched circuit split that only the Supreme Court can resolve. Issuance of the mandate before the Supreme Court has the opportunity to consider the petition would trigger proceedings on remand — including mandatory attorney's fees under NRS § 41.670 as per the Order — that would cause immediate and irreparable harm to Plaintiffs. Conversely, a brief stay of the mandate will cause no material prejudice to the Cornelia Defendants. The stay merely preserves the status quo while the petition is pending and does

23

not alter the parties' substantive rights. The balance of equities therefore favors a stay.

## V. CONCLUSION

For the foregoing reasons, the Court should stay the issuance of the mandate pending the filing and disposition of the petition for a writ of certiorari.

Dated this 2nd day of March, 2026.

By: /s/ Tamara Beatty Peterson
TAMARA BEATTY PETERSON (Bar No. 5218)
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: 702.786.1001

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance

**9th Cir. Case Number:** 23-3227; 23-3390; 24-159

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 27, the attached Motion to

Stay Mandate Pending Petition for Certiorari is (select one):

☒     Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words: 3909.**

**OR**

☐     In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Date: March 2, 2026.**


**Signature: s/ Tamara Beatty Peterson**
*(use "s/[typed name]" to sign electronically filed documents)*

25

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing APPELLANTS' MOTION TO STAY MANDATE PENDING PETITION FOR CERTIORARI with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 2, 2026.

I further certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/   Julia L. Melnar
on behalf of Peterson Baker, PLLC